```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

---------------------------------X
                                 :
RUSLAN MIRVIS,                   :
                                 :  19-CV-02573 (LDH)
            Plaintiff,           :
                                 :
       v.                        :
                                 :  April 15, 2020
HERMAN QUAY, et al.,             :  Brooklyn, New York
  CASUALTY INSURANCE CO., et al, :
                                 :
            Defendants.          :
                                 :
---------------------------------X

       TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
              BEFORE THE HONORABLE VERA M. SCANLON
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          PHILIP M. HINES, ESQ.
                            Held & Hines, LLP
                            2004 Ralph Avenue
                            Brooklyn, New York 11234


For the Defendants:         SEAN P. GREENE, ESQ.
                            United States Attorney's Office
                            Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201




Court Transcriber:          MARY GRECO
                            TypeWrite Word Processing Service
                            211 N. Milton Road
                            Saratoga Springs, New York 12866



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

2

1         THE COURT:  All right.  This case is <u>Mirvis v. Quay</u>,
2 19-CV-2753.  So for the plaintiff?
3         MR. HINES:  Philip Hines.  Good afternoon.
4         THE COURT:  Hello.  And then for the defendants?
5         MR. GREENE:  AUSA Sean Greene.
6         THE COURT:  Okay.  Let me just note one thing, and
7 this is maybe more for my deputy, this was -- am I right this
8 case originally started as a pro se, is that right?
9         MR. HINES:  Correct.
10         THE COURT:  Okay.  And then counsel came in.  For
11 some reason it's still marked on the docket as a pro se.  So we
12 can probably just try to update that.  So all right.  So we
13 have your motion at 50 which is the motion to stay discovery
14 and adjourn this conference in anticipation of a motion to
15 dismiss.  And then you have the order at April 10th with the
16 briefing schedule from Judge DeArcy Hall and then we're having
17 a conference now.  So really the reason to have the conference
18 is to discuss if there's any discovery that can or should be
19 done at this stage and if there's any preservation issues.  And
20 then we can go from there.  I want to just make sure that --
21 especially since this had started as a pro se case, then
22 counsel came into it a little bit later.  So we have your
23 letter which is that April 7th letter.  And so it's not the
24 usual practice to stay things but you're talking about doing
25 this on consent, so [inaudible] question.  I don't normally

3

1  stay things during a motion to dismiss, so why should we look
2  at this one differently?  And that's putting aside the pandemic
3  circumstances which I think don't generally require stays but
4  do require more time.  And then even if there's a stay, is
5  everybody who needs to be on notice of this on notice?  So just
6  let me hear from the plaintiff first, then defendants, then
7  I'll see where to go.
8             MR. HINES:  Sure.  So the defendant had reached out a
9  while back for a consent to stay discovery pending their letter
10 requesting a pre-motion conference.  They were holding off on,
11 you know, consenting to staying discovery until, from my
12 perspective, we had heard from the judge as to what her
13 preliminary thoughts were on the motion and what the scope, if
14 any, was going to be limited or anything like that.  Once the
15 judge converted it to canceling the conference and just having
16 them brief the motion, we consented.  I think that part of our
17 opposition is going to be that the motion is premature, that
18 the pleadings are sufficient, and that there's plenty of
19 documentary proof in the Government's records to support the
20 claims, some of which we have, most of which we don't.  I'm
21 happy to engage in discovery.  I don't want to waste the
22 parties' time and efforts though while all of this other
23 craziness is going on with also conducting and trying to get
24 records.  So I understand that whatever records we get are
25 probably going to come into the motion is fully briefed.  And

4

1  so I don't know that it would change our papers at all but I
2  think that, you know, if we -- I'm okay with delaying the
3  beginning of discovery until some reasonable period of time
4  afterward.  And if it takes the Court however long it takes the
5  Court to decide the motion, I'm happy to engage in discovery
6  during that period.  But for right now, you know, I don't know
7  how productive it would be with regard to the anticipated
8  motion.  So that's why I consented for the time being.
9              THE COURT:  Just so I'm clear, is there agreement
10 with the stay based on life's current circumstances or is it
11 based on the idea that were the Government to be successful or
12 the defendants to be successful then there are just -- the
13 discovery would not have been necessary?
14             MR. HINES:  Yeah.  I  mean if the Government -- I
15 don't think that the Government is going to be successful on
16 all of their -- you know, dismissing the case in its entirety.
17 I think that, you know, maybe they are able to reduce the
18 amount of claims or the scope of the case in which case that
19 would limit or focus the discovery that's needed.  But you
20 know, given -- generally speaking, I don't agree to stay
21 discovery pending motions to dismiss.  I think that's
22 counterproductive to plaintiff proceeding with their case.  But
23 given life circumstances at the time, it seemed to make the
24 most sense.
25             THE COURT:  Well, I guess to try to tease it out a

1  little more, is your point that there could or should be a stay
2  for say the next two or three months till basically the
3  pandemic circumstances become a bit more clear or, you know, is
4  it tied to the motion?
5           MR. HINES:  Yeah.  I mean I'd be happy to start doing
6  discovery, you know, maybe in -- I mean we can serve requests
7  or whatever, but in dealing with other Government agencies they
8  really have no access to providing records anyway at this
9  point.  So --
10          THE COURT:  But the motion, the briefing schedule and
11 the motion isn't even going to be done until May 13th and
12 then --
13          MR. HINES:  Right.
14          THE COURT:  -- giving for the purpose of scheduling,
15 considering it's, you know, likely to take the judge some weeks
16 or some months to be able to decide, to get to and decide the
17 motion, that would mean probably longer than we're all going to
18 be out of work.
19          MR. HINES:  Right.
20          THE COURT:  You know, it doesn't mean there aren't
21 going to be limitations.  It doesn't mean there aren't going to
22 be other demands on various parties, you know, particularly in
23 this case.  You know, various correctional facilities are quite
24 stressed.  And so, you know, the staffing ability, et cetera,
25 for these individuals may be, you know, limited or I don't

6

1  know, require additional planning.  But that's one thing.
2  That's different from saying let's wait and see whether the
3  motion resolves wholly in your favor or partially in your
4  favor, we're dealing with narrowed case or the case goes away.
5  I mean that's what the Government is hoping for.  So --
6              MR. HINES:  Yeah.  I mean I would be more comfortable
7  with maybe --
8              THE COURT:  What's your reasoning?
9              MR. HINES:  I'd be more comfortable maybe with, you
10 know, we maybe hold the initial conference in four months from
11 now let's say.  Things might be a little bit more normal.
12 Hopefully more normal.
13             THE COURT:  All right.  And the Government's
14 position?
15             MR. GREENE:  Thank you, Your Honor.  So as an initial
16 matter, let me just say that as far as defendants are
17 concerned, the issue is more legal than it is contextual.  You
18 know, the reason that we moved for the stay here is because
19 we're making, you know, strictly legal arguments, you know,
20 except for exhaustion which can be viewed in sort of on a
21 factual basis.  But even there, I don't think there's any real
22 dispute as to whether there was exhaustion or not.  So the
23 only -- and in fact, all of the claims in the Government's view
24 can be disposed of under [inaudible] analysis.
25             So the Government's position is that there is a good

7

1  legal and judicial economy reason or reasons to not go forward
2  with discovery as yet.  And that was my understanding of the
3  reasons underpinning plaintiff's agreement to the stay
4  particularly given that they wanted to wait to see if Judge
5  DeArcy Hall would grant leave for defendants to move to dismiss
6  and agree to the stay once -- the day that order came down.
7  But that all being said, you know, if the Court is so inclined,
8  you know, defendants are not opposed as a matter of principle
9  to adjourning this conference for a reasonable amount of time
10 to allow, you know, sort of normal or post normal circumstances
11 to return.
12              THE COURT:  Normal?  Let's see what the post normal
13 is.  Okay.  Let me ask you a different kind of question and it
14 may be the answer is somewhere in this record but I'm just not
15 seeing it, I haven't seen it.  There are a couple of Does in
16 here.  There's a plaintiff Doe, Maury Doe.  I don't know what
17 that's about.  And then there is Lieutenant -- I'm not sure if
18 Lieutenant Poe is actually the person's name or not.  Then
19 there's John Doe 1 through 3.  There's first name unknown.
20 That's really John Calixte, G. Gonzalez and the Jane Doe
21 correction officer.  So as to the defendants whose names are
22 incomplete, not confirmed, do you know who you're actually
23 talking about?  And then as to the Does what is the story?
24 They should be named?  They're going to be named?  They don't
25 need to be named?  What are your legal positions?  Because not

8

1  doing discovery would mean not naming the people if they need
2  to be named.  I'm not sure what your respective positions are
3  on those people.
4          MR. HINES:  So Maury Doe and John Calixte and some of
5  the other people like that were identified by the defendant and
6  they've answered for them.  And the other --
7          THE COURT:  And you're satisfied with that, that you
8  know who they are, you're good with it?
9          MR. HINES:  Yes.  I think I'd have to -- I think the
10 docket would need to be, or maybe the complaint amended just to
11 include their full names.  But for these purposes they've
12 identified them and, you know, they seem to be the right
13 people.
14         THE COURT:  Okay.
15         MR. HINES:  For the other John Does, I believe those
16 would just be witnesses and other people that were -- that are
17 not known specifically but were present.  We have to figure
18 that out through any number of records I'm guessing through the
19 discovery process.  But for right now the main people are all
20 accounted for.
21         THE COURT:  So are they Does against whom you would
22 make some kind of claim for just failure to intervene or they
23 were just -- this was just a legacy point from the plaintiff's
24 pro se pleadings?
25         MR. HINES:  They are collectively -- there are

1  collective allegations against them for failing to intervene.
2  There is no specific identifying information for them.
3            THE COURT:  That's my -- my point is if you are
4  intending to name Does and it's a productive exercise and it's
5  something you want to do, you need to do it sooner than later
6  or at least be pursuing that information.  So do a series of
7  questions, you know?  Do you know anything about them?  Are
8  they people that you're actually going to try to name and then,
9  you know, what is the position?  You know, I don't want any
10 time lines running here for that.
11           MR. HINES:  Yeah.  I'll speak to my client about
12 that.
13           THE COURT:  Okay.  I'm just looking back at the
14 complaint.  When did this happen?  I get the Government's point
15 that there's no claim here.  Right?  There's no Bivens and we
16 don't know, whatever, there's no theory but it there were a
17 claim and you needed to name these people and depending on what
18 kind of claim it is and what the statute of limitations would
19 be -- what's the date.  All right.  So looking at Page 3 of the
20 complaint, the first date June 6th through July 7th.  So look, I
21 understand, again I'll be clear, I understand the Government is
22 making arguments that there's all kinds of timing problems
23 here, exhaustion, that there's no claim, et cetera.  But
24 depending on the applicable statute of limitations, if it were
25 three years, you would running up against it soon.  So you

10

1  know, the stay is fine, or at least the postponement of this
2  conference, you know, say there's approximately a 90 day stay,
3  that you know, unless you have some agreements and tolling
4  understandings by somebody authorized to enter into that, then
5  this can start to be an issue if your theory [inaudible].
6          MR. HINES:  Sure.  I mean I would be obviously
7  agreeable to a tolling until this is resolved.
8          THE COURT:  Right.  So [inaudible] tolling is always
9  tough.  You know, according to the description, these are
10 correction officers.  They might be represented by the
11 Government, but they're not here and maybe they're not on
12 notice.  We don't really know.  So I don't know if there's
13 anyone authorized to enter into it.  Possibly the Government.
14 I don't know.  Sometimes Government agencies are willing to
15 agree to these things and sometimes they take the position that
16 well I don't represent that person so I'm not going to enter
17 into an agreement.  You know, you can have the record reflect
18 that you have asked for information and the Government's not in
19 a position to respond or something.  And I don't know, I'm
20 giving you examples.  I don't know --
21         MR. HINES:  Right.
22         THE COURT:  -- the particulars here and I don't know
23 if this is somebody who, you know, people who need names.
24 That's again your call --
25         MR. HINES:  Yeah.  I mean maybe -- sorry.  Maybe what

11

1  I would suggest is I will speak to my client and then I will
2  speak to Mr. Greene, see if we can come to an agreement as to
3  whether or not we're going to be amending for the John Does.
4  And if need be, we can file a [indiscernible] motion or
5  whatever maybe to identify them and then proceed that way.
6         THE COURT:  Okay.  So what we're looking at now is
7  basically rescheduling, postponing the discovery and
8  rescheduling an initial conference for about 90 days out with
9  the exception that if plaintiff needs to pursue John and Jane
10 Doe information that you will raise it with the defendants'
11 counsel, the appearing defendants' counsel and the Court.  All
12 right?
13        MR. HINES:  Yes, yes.
14        THE COURT:  For the Government?
15        MR. GREENE:  Yeah.  Sorry.  Your Honor, I just need
16 to put in here for the record that as Your Honor noted, my
17 office only represents the named defendants and you know, that
18 the current motion practice is based on defendants' amended
19 complaint as it stands.  And so I'm not in a position to
20 consent to anything or even really to consider anything until
21 the motion has played out.  So I think at this point, you know,
22 it's not really appropriate to start thinking about how the
23 complaints can be amended further particular because we are on
24 the eve of filing our motion.  So I think, you know, if there
25 are arguments that plaintiff wants to raise at some later date

12

1 after -- either in opposition or to the motion to dismiss or at
2 some point beyond that, certainly he can raise that.  But I
3 think, you know, with regards to the complaint, I think, you
4 know, our position certainly is that it has to stand on what it
5 is in this moment.
6         THE COURT:  But it can't.  That's the problem.  The
7 plaintiff's best scenario, and I am not taking a legal
8 position, is that he's raised cognizable claims that they can
9 be raised against individuals and that there's a three year or
10 greater statute of limitations.  And I understand you're saying
11 there's no cognizable claim under the Supreme Court precedent
12 related to Bivens that neither the individuals or the
13 Government can be sued on this.  And even if these claims
14 existed, the defendants, I'm sorry, plaintiff did not exhaust
15 and so he's entitled to this Federal Court practice and any
16 discussion about statute of limitations is really missing the
17 point because there is no viable claim.  But if there's a way
18 for the plaintiff to succeed, and, and this is an unknown, the
19 John and Jane Does needed to be named, I don't know because I
20 can't -- I just don't know through these pleadings how
21 important or not important.  You know, they could be
22 individuals [inaudible] viable claims but there's nothing to be
23 gained by adding them.  Or maybe there is.  Then they'd have to
24 deal with this case as a party rather than a non-party.  You
25 know, all unknown given -- well, for me, the particular facts

13

1  and the legal landscape.  But if things were to go the
2  plaintiff's way, then I would -- even on the schedule we're
3  talking about which is the 90 days out, he would be exactly at
4  the running of the three year statute of limitations as to the
5  first incident and, you know, stuck being able to say it was
6  tolled because I diligently pursued the information and it
7  wasn't available.  And that seems to me to require some record
8  development for the plaintiff.  If you are not in a position to
9  agree to some kind of tolling as to this complaint and the John
10 Doe, then we need a clear record that the plaintiff has tried
11 diligently to obtain information and that information was not,
12 was in the possession of the Government but not available.  And
13 when I say the Government, it's obviously very broad.  It might
14 mean the particular individuals, it might mean the Government's
15 institutional records as to who was there.  It might be in the
16 recollection of the other defendants.  I mean who knows what it
17 is.  It might be the duty roster.  You know, I don't know.  But
18 if plaintiff doesn't diligently pursue the information, then,
19 you know, there's a lot of ifs.  Under plaintiff's best case
20 scenario then you would be stuck not being able to sue those
21 individuals.  Now maybe that makes no difference to anything
22 but it's not a question of whether the Government, you know,
23 thinks it should stick with the complaint as it is or not.  If
24 the John and Jane Does need to be in this action, they need to
25 be in this action sooner rather than later and plaintiff needs

14

1  to find out who they are.  So they can [inaudible] and they can
2  actively participate in the case.  So it seems like they have a
3  series of questions some of which can be answered by both of
4  you, some of which are contingent on the district judge's
5  decision.  But if plaintiff, you know, ends up in the best case
6  scenario, then plaintiff needs to have undertaken some activity
7  before the motion is likely decided.  I mean is there a reason
8  to look at this differently than what I just described?
9         MR. GREENE:  So I mean I think the primary reason is
10 that what Your Honor is describing are suggestions that are
11 being made about what plaintiff should do with respect to
12 possibly getting this information or amending the complaint is
13 not -- is kind of counter-factual to what has occurred.  There
14 have been no requests from the Government for any such
15 information to date.  I --
16        THE COURT:  But you're asking me for a stay.  I'm
17 not -- plaintiff's plan is to pursue discovery.  You're asking
18 for a stay.  I'm saying is a stay something that can or should
19 be given here because plaintiff has some time sensitive needs
20 that can't wait for this?  If plaintiff wants to pursue it, and
21 there's a lack of clarity right now for me and it may be
22 because plaintiff needs to talk to plaintiff's -- sorry,
23 plaintiff's counsel needs to talk to the plaintiff about the
24 actual facts that if the -- you're not going to get the stay if
25 this is going to impede the plaintiff's ability to litigate the

15

case against necessary parties.  I can't tell based on the current record how plaintiff's counsel looks at those individuals.

MR. GREENE:  Well, Your Honor, to be fair, this is the first time I'm hearing of any of this.  And so my request for the stay was not based in any way on either trying to avoid any request for information or not provide information to plaintiff.  And so what is happening now I guess in this exchange is I suppose, I think actually that plaintiff maybe has to think about in response to what the Court has said whether he wants to do anything on that score.  And I appreciate that, but my request for the stay, defendant's request for the stay, had nothing to do with what we're talking about.

THE COURT:  Okay.  Well so we're back to what I'm suggesting here which is that there be -- this initial conference will be rescheduled approximately 90 days out.  You don't need to conduct discovery in that period with the caveat that if plaintiff decides the plaintiff needs to pursue discovery related to the identity of those John Does, Jane Doe, so that they can -- the complaint can be amended to identify them and give them notice in a timely fashion, or at least the plaintiff pursue that information in a way, and then if the Government is unable to provide it for various reasons, you know, there's a pandemic, a lack of staffing challenges, the

16

1  record-keeping office at the prison, you know, whatever it is,
2  you can let me know or let plaintiff know, then it will be what
3  it'll be.  But it won't have just drifted because we couldn't
4  get to it under these circumstances.  So the ultimate order is
5  rescheduled about 90 days out.  Discovery doesn't need to
6  happen.  You're not going to pursue it except that plaintiff
7  will decide whether plaintiff needs to pursue discovery about
8  the Doe identities.  And if so, then plaintiff has to decide
9  what's the best way to do this.  You know, I have no opinion as
10 to whether -- whatever.  Whatever plaintiff wants to do.  But
11 pursuing that discovery is not a violation of any stay order.
12 And then the Government, you respond, whatever your response
13 is.  And maybe your response is that you can't respond other
14 than to say that there are difficulties that are insurmountable
15 in the short period of time.  But then, you know, then the
16 Court would be faced with that information.  Okay.  So I think
17 that covers what we have before us.  Is there anything else?
18             MR. HINES:  No, Your Honor.
19             MR. GREENE:  Nothing from the Government.
20             THE COURT:  How about from the Government?  Okay.
21 All right.  Stay safe.  Hope everything goes well for
22 everybody.  Maybe we'll see you in person at some point.  All
23 right.  Take care.  Bye.
24             MR. HINES:  All right.  Thank you.  Bye-bye.
25                        * * * * *

```
                                                              17
1      I certify that the foregoing is a court transcript from an
2  electronic sound recording of the proceedings in the above-
3  entitled matter.
4
5                              _____Mary Greco_____
6                                    Mary Greco
7  Dated:  April 17, 2020
```