UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RUSLAN MIRVIS,

                         Plaintiff,

                     v.

HERMAN QUAY, *et al.*,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No.
19-CV-2573

(DeArcy Hall, J.)
(Scanlon, M.J.)


## CONSOLIDATED STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1


BREON PEACE
United States Attorney
Eastern District of New York
*Attorney for Defendants Thomas Pope,*
*Veronica Metzger and Pierre Calixte*
271 Cadman Plaza East
Brooklyn, New York 11201

Matthew Modafferi
Kimberly Francis
Assistant U.S. Attorneys
(Of Counsel)

Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants Lieutenant Thomas Pope, Lieutenant Veronica Metzger, and Senior Officer Specialist Pierre Calixte ("Defendants"),[1] by their attorney, Breon Peace, United States Attorney for the Eastern District of New York, Matthew Modafferi and Kimberly Francis, Assistant United States Attorneys, of counsel, respectfully submit this Consolidated Local Rule 56.1 Statement of Undisputed Material Facts.  For the Court's convenience, this composite document collects: (1) the statements set forth in Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1; (2) the responses thereto set forth in Plaintiff's Response to Defendants' Statement of Undisputed Facts; and (3) Defendants' reply to Plaintiff's Response.

Defendants respectfully submit that the consolidated Local Rule 56.1 statement presents no genuine issue of material fact.

<u>Defendants Were Not Deliberately Indifferent to Any Serious Medical Needs</u>

**<u>Defendants' Undisputed Fact No. 1</u>**

From April 21, 2017 to July 9, 2019, Plaintiff was an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn.  *See* Modafferi Decl.[2]  Exh. A 17:14-20 (relevant pages from

---

[1] On February 8, 2022, the Court dismissed all claims against defendants Quay, Garcia, Gonzalez, White, and Murray, and only Plaintiff's *Bivens* claim for deliberate indifference to medical needs against defendants Calixte, Metzger and Pope remain. *See* Feb. 8, 2022 Dkt. Entry.

It bears noting that "a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017)).

[2] Citations to the "Modafferi Decl. Exh." are references to the February 21, 2023 Declaration of Matthew Modafferi and the exhibits appended thereto submitted in support of this motion.

Plaintiff's Deposition); *see also* Modafferi Decl. Exh. B (Plaintiff's BOP housing history, Bates No. Mirvis-BOP-000619).

> *Plaintiff's Response:* Admitted.

**Defendants' Response to Undisputed Fact No. 2:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 2

On July 12, 2017, Plaintiff requested that he be placed in protective custody. *See* Exh. A 33:17-34:9; *see also* Modafferi Decl. Exh. C at p.2 (Inmate Investigative Report dated July 12, 2017).

> *Plaintiff's Response:* *Plaintiff disputes this assertion. While the cited evidence suggests that BOP acted on Plaintiff's request for protective custody on July 12, 2017, Plaintiff first alerted BOP staff that he was being attacked and extorted during the month that such attacks and extortion occurred—i.e., June through July 2017—by telling staff and sending emails. Mirvis Deposition Transcript, Exhibit 1 (hereafter, "Mirvis") at 29:10-19; 30:8-32:6; Def Ex. C (dkt. 90-5) at p. 3.30. Further, it was logged by BOP in its TruScope entry system (which purportedly records a housing area officer's daily log) that (a) Plaintiff purportedly hit the duress button on July 7, 2017, at 11:55 pm because of an assault and/or attack, (b) Plaintiff saw a lieutenant on July 8, 2017 at 8:51 am, and (c) Plaintiff saw a lieutenant on July 12, 2017 at 9:06 am. Pl. Ex. 9 at pages 1-3, 6-8 (BOP 686-88, 691-93); Calixte Deposition Transcript, Exhibit 2 (hereafter, "Calixte") at 25:24- 26:9; Metzger Deposition Transcript, Exhibit 3 (hereafter, "Metzger") at 31:8-32:18. Plaintiff further emailed BOP staff on January 14, 2018, and explained that the attack took place on July 11, 2017, at some time between 8:30 pm and midnight. Pl. Ex.*

*5 (BOP 700).*

**Defendants' Response to Undisputed Fact No. 2:**  Plaintiff does not actually dispute the fact that Plaintiff sought protective custody on July 12, 2017.  Instead, Plaintiff's response points to additional allegations concerning Plaintiff's prior complaints about two other inmates on his unit – allegations which are immaterial to the only claims remaining in this case, which are *Bivens* claims concerning Plaintiff's medical treatment.  In any event, those prior alleged complaints concerning other inmates on Plaintiff's unit do not create any genuine dispute as to the fact that Plaintiff sought protective custody on July 12, 2017.  *See* Modafferi Decl. Exh. C at p.2 (Inmate Investigative Report dated July 12, 2017); *see also* Pl. Ex. 9 at pp. 3, 8. Thus, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

**Defendants' Undisputed Fact No. 3**

On July 12, 2017, at approximately 2:00 p.m., Plaintiff was taken out of his housing unit and escorted to an office.  *See* Exh. A 32:3-6.

*Plaintiff's Response:  Plaintiff admits that he was taken out of the housing unit on July 12, 2017, but cannot confirm exactly what time it was. Plaintiff further clarifies that he requested medical attention for his injuries on July 12, 2017 at 8:11 am. Pl. Ex. 4 (BOP 577).*

**Defendants' Response to Undisputed Fact No. 3:**  Plaintiff fails to actually dispute this fact.  Indeed, Plaintiff admits this fact (as he must because this statement is taken verbatim from Plaintiff's deposition testimony.  *See* Exh. A 32:3-6.  Plaintiff's purported "clarification" of his own clear deposition testimony does no such thing.  Instead,

Plaintiff's response merely offers additional facts – facts which are immaterial to the *Bivens* claim against Defendants Pope, Metzger, and Calixte – who are not medical staff – because the email Plaintiff's response references was sent to medical staff (not Defendants).  *See* Pl. Ex 4.   Thus, Plaintiff's response should be rejected, and this paragraph deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

### Defendants' Undisputed Fact No. 4

Lieutenants Metzger and Pope asked Plaintiff what happened on the unit for purposes of an investigation into Plaintiff's allegations.[3]  *See* Exh A 35:22-25; 36:2-5, 11-13; 52:11-16; *see also* Exh. C.

> *Plaintiff's Response:  Plaintiff admits that he spoke to Lieutenants Pope primarily (and Lieutenant Metzger was present), but dispute the substance or intention of those conversations. Lieutenant Pope was more interested in Plaintiff's criminal case and Plaintiff did not perceive that Lieutenant Pope or Metzger was going to open an*

---

[3] With respect to the July 12, 2017 allegations, Defendants are moving based on Plaintiff's version of events.  BOP records reveal that Lieutenants Pope and Metzger were not working together on July 12, 2017 and both testified that they first interacted with Plaintiff on September 6, 2017.

*Plaintiff's Response:  Plaintiff notes that "his version" of the events is not necessarily what Defendants assert throughout this statement. On the contrary, as expressed herein, many of Defendants' assertions are not Plaintiff's account of what happened, are contradicted by Plaintiff's testimony, or are contradicted by other evidence, including* Defendants' *testimony and documents produced. While Defendants appear to concede for purposes of this motion that Pope and Metzger spoke to Plaintiff on or about July 12, 2017, the circumstances of that conversation and the events preceding and succeeding it, are disputed.*

**Defendants' Response:**  Defendants reiterate that they are moving based on Plaintiff's version of events concerning *the July 2017 claim*.  Many of Plaintiff's other allegations are not material (or even relevant) to the only claims remaining in this case, which are *Bivens* claims concerning Plaintiff's medical treatment.

*investigation, or that they were receptive to, or cared about, what Plaintiff tried to tell them. Mirvis 36:14-18, 37:18-38:21.*

**Defendants' Response to Undisputed Fact No. 4:** Plaintiff fails to actually dispute this fact. Indeed, Plaintiff testified that Lieutenants Pope and Metzger asked Plaintiff what happened on the unit (*see* Exh. A 36:5 ("Then they asked me what happened") for an investigation into Plaintiff's allegations concerning what took place. *See id.* 52:11-16 (Q: "The first time you met with Lieutenant Poe and Lieutenant Metzger it seemed to be about investigating the extortion and the assault that took place in J72, is that fair?" A: "Yes."). Plaintiff attempts to color his claims by adding his conjecture that Lieutenant Pope was more interested in criminal charges. Thus, Plaintiff's statements do not contradict Defendants' fact and this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 5

In the office, Plaintiff had photographs taken of some bruises and redness to his chest and hands. *See* Exh. A 35:22-25; 36:2-5, 11-13.

*Plaintiff's Response: Admitted.*

**Defendants' Response to Undisputed Fact No. 5:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 6

Plaintiff had no other visible injuries. *Id.* at 39:15-19.

*Plaintiff's Response: Admitted.*

**Defendants' Response to Undisputed Fact No. 6:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 7

Plaintiff was in the office with Lieutenants Pope and Metzger for about 20 minutes. *Id.* at 38:22-24.

*Plaintiff's Response*: *Admitted, and Plaintiff clarifies that this was an estimate made by Plaintiff more than 5 years after the event.*

**Defendants' Response to Undisputed Fact No. 7:** Plaintiff admits this fact but attempts to somehow undermine it without any citation to evidence. Such an attempt is not proper. *See Greene v. City of New York*, 08-cv-00243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243, at *4 n.3 (E.D.N.Y. Mar. 15, 2017) (affording no weight to any argument or statements that are not supported by evidence in 56.1 statements). Because there is no evidentiary citation directly contravening Defendants' stated fact, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 8

This was the first time that Plaintiff had ever interacted with Lieutenants Pope and Metzger. *Id*. at 37:10-17.

*Plaintiff's Response*: *Admitted.*

**Defendants' Response to Undisputed Fact No. 8:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 9

Plaintiff was then taken to see MDC's medical staff (hereinafter "MDC's medical staff" or "medical").  *See* Exh. A 39:20-40-5.

*Plaintiff's Response:  Admitted.*

**Defendants' Response to Undisputed Fact No. 9:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 10

Plaintiff was examined by nurse Altman who noted that he had no respiratory distress, old bruises on his left arm, tenderness to left rib area, and no other marks/abrasion or injuries were observed.  *See* Exh. A 41:14-23; 42:17-43:2; *see also* Modafferi Decl. Exh. D (Medical record dated July 12, 2017, Bates No. Mirvis-BOP-00028-29.

*Plaintiff's Response:  Plaintiff admits that this was what the medical record stated.*

**Defendants' Response to Undisputed Fact No. 10:** Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 11

Nurse Altman ordered X-rays to be taken and Motrin/Tylenol for pain.  *See* Exh A 43:7-17; *see also* Exh. D.

*Plaintiff's Response:  Plaintiff admits that he received Tylenol, but disputes that it was sufficient for his pain. Mirvis 43:14-17. Plaintiff admits that he eventually received x-rays, but disputes that it was timely or sufficient because the x-rays were not taken until "almost a month and a half later." Mirvis 43:16-17.*

**Defendants' Response to Undisputed Fact No. 11:** Plaintiff fails to actually dispute this fact.  Indeed, as set forth in the response above, Plaintiff not only admits that x-rays and Tylenol were ordered but also that he received them.  Plaintiff's additional statements are

merely an attempt to color his claims and do not create any genuine dispute as to this fact. Thus, Plaintiff's response should be rejected, and this paragraph deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

**Defendants' Undisputed Fact No. 12**

Plaintiff was informed to contact the MDC's medical staff with any questions or concerns, he verbalized an understanding, and was agreeable with the plan of care. *See* Exh. A 44:12-14; *see also* Exh. D.

> *Plaintiff's Response:  Plaintiff disputes this statement. The plan that Plaintiff understood, and was agreeable with, involved taking x-rays promptly, not "almost a month and a half later"; and involved the receipt of appropriate pain medication relative to the pain experienced by Plaintiff (i.e., the receipt of extra-strength Tylenol or stronger painkillers). Mirvis 43:14-44:14.*

**Defendants' Response to Undisputed Fact No. 12:**  Plaintiff fails to actually dispute this fact.  This fact comes directly from Plaintiff's medical record (Exh. D) and Plaintiff testified at his deposition that he verbalized an understanding and was agreeable with plan of care.  *See* Exh. A 44:12-14 (Q. "That last sentence says he verbalized understanding and was agreeable with plan of care. Is that accurate?"  A. "They told me x-rays would be ordered, yes."  Q. "Were you agreeable with that plan?"  A. "Yes, but I didn't know how long it was going to take").  Plaintiff admits Fact No. 12 but in hindsight feels that it took too long to receive an x-ray.  Plaintiff's additional statements are merely an attempt to color his claims and neither asserts nor cites to any evidence creating any genuine dispute as to this fact.  Thus, Plaintiff's response should be rejected, and this paragraph deemed

admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 13

Plaintiff received pain medication after this encounter with the MDC's medical staff.  *See* Exh. A 43:18-21.

*Plaintiff's Response:*  *Plaintiff admits that he received pain medication, but disputes that it was adequate. Mirvis 43:14-17.*

**Defendants' Response to Undisputed Fact No. 13:**  Plaintiff's response admits that he received pain medication and fails to actually dispute this, which is the sole fact being asserted here.  Plaintiff's additional comment in his deposition that he "needed stronger painkillers" is an attempt to characterize his claims as certain and does not create any genuine dispute as to the fact that he received the pain killer.  Thus, Plaintiff's response should be rejected, and this paragraph deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 14

Plaintiff's ribs eventually healed. *Id.* at 65:3-4.

*Plaintiff's Response:*  *Admitted.*

**Defendants' Response to Undisputed Fact No. 14:**  Because Plaintiff concedes this fact, the fact should be deemed admitted.

## Defendants' Undisputed Fact No. 15

On February 5, 2019, Plaintiff complained to Officer Calixte that he could not eat and was vomiting.  *Id.* at 53:16-24.

*Plaintiff's Response*:  Plaintiff admits that he spoke to Officer Calixte on February 5, 2019, but disputes Defendants' characterization of that conversation. Plaintiff told Officer Calixte that he had "a problem," he "can't eat", and he was "puking blood." Mirvis 53:16-24 (emphasis added). Plaintiff also "couldn't stand up, [] was curled up, [and] couldn't walk." Mirvis 57:2-6.

**Defendants' Response to Undisputed Fact No. 15:**  Plaintiff fails to actually dispute this fact.  Indeed, Plaintiff admits that on February 5, 2019, he complained to Officer Calixte that he could not eat and was vomiting.  Plaintiff's additional comments in his deposition that "he couldn't stand up, was curled up, and couldn't walk" are disputed by Officer Calixte who testified that Plaintiff only complained of vomiting blood and observed Plaintiff as "fine," sitting and talking to other inmates.  *See* Exh. E 38:21-24, 50:6-15.  Thus, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

**Defendants' Undisputed Fact No. 16**

Officer Calixte told Plaintiff that he will call medical.  *Id.* at 53:16-24; 54:11-14; 55:10-17.

*Plaintiff's Response*:  Plaintiff admits this is what Officer Calixte told him, but Plaintiff does not know if Officer Calixte actually called medical; and if he did, when he called medical.

**Defendants' Response to Undisputed Fact No. 16:**  Plaintiff admits this fact and it should be deemed admitted.  Indeed, this fact comes directly from Plaintiff's deposition testimony.  Plaintiff's additional questions and speculations, without any citation to admissible evidence, are improper, and do not create any genuine dispute as to this fact.

**Defendants' Undisputed Fact No. 17**

Thereafter Officer Calixte called the MDC's medical staff to request treatment for Plaintiff. *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; *see also* Modafferi Decl. Exh. E 38:5-9 (relevant pages from Calixte's Deposition).

*Plaintiff's Response:  Plaintiff admits that Officer Calixte told Plaintiff, and testified, that he called medical, but Plaintiff does not know if Officer Calixte actually called medical; and if he did, when he called medical.*

**Defendants' Response to Undisputed Fact No. 17:**  Plaintiff admits this fact and it should be deemed admitted.  Indeed, this fact comes directly from Plaintiff's deposition testimony, among other admissible evidence.  Plaintiff's additional statements about things he "does not know," in the absence of any citation to admissible evidence, are irrelevant, do not contradict any aspect of the stated fact, and therefore do not create anu genuine dispute as to this fact.

**Defendants' Undisputed Fact No. 18**

February 5, 2019 was the first time that Officer Calixte had interacted with Plaintiff and Officer Calixte did not know him.  *See* Exh. E 36:11-22; 37:22-25.

*Plaintiff's Response:  Admitted.*

**Defendants' Response to Undisputed Fact No. 18:**  Because Plaintiff concedes this fact, the fact should be deemed admitted.

**Defendants' Undisputed Fact No. 19**

Lieutenant Metzger came to the unit on February 5, 2019 and instructed Officer Calixte to call medical again for Plaintiff.  *See* Exh. A 54:24-56:5; 55:10-22; *see also* Exh. E 47:16-48:13.

*Plaintiff's Response:  Plaintiff disputes this assertion. Lieutenant Metzger did not testify that she instructed Calixte to call medical again. In fact, Lieutenant Metzger purportedly spoke to Calixte, then finished her round, then spoke to Calixte again (when he purportedly mentioned the issue with Plaintiff) and then, as she was heading out the door, she purportedly spoke to Plaintiff. Metzger 56:8-11, 52:16-54:17. Lieutenant Metzger did not check back in with Calixte after her conversation with Plaintiff. Metzger 56:15-22, 68:12-18.*

**Defendants' Response to Undisputed Fact No. 19:**  Although Plaintiff's response states that it "disputes" this assertion, it fails to actually do so.  Officer Calixte testified that he was instructed to call medical a second time.  Exh. E 47:16-48:13.  Lieutenant Metzger does not remember instructing Officer Calixte to call again, but that does not create a dispute of fact because nowhere in the testimony referenced in Plaintiff's response does Lieutenant Metzger deny that she told Officer Calixte to call medical.  *See* Pl.'s Ex. 3. Thus, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

**Defendants' Undisputed Fact No. 20**

Officer Calixte called medical a second time and informed Plaintiff that he called medical again. *See* Exh. E 47:16-24; 48:20-22; 49:6-12.

*Plaintiff's Response:  Plaintiff disputes this assertion for the same reasons as in No. 18-19— specifically, that there is no evidence that Calixte called medical one or two times, and this is the kind of information that would and should have been logged and there are no such records. Calixte 25:24-28:17, 34:25-35:13, 39:13-23, 42:17-20, 44:10-16, 82:25-*

12

*85:12; Nazryan Decl. 13; Pl. Ex. 9 (BOP 690, 695). Further, Lieutenant Metzger never testified that she instructed Calixte to call medical again (and never checked back in with Calixte after speaking with Plaintiff), bringing this issue as to whether he did call medical into dispute. Metzger 56:15-22, 68:12-18.*

**Defendants' Response to Undisputed Fact No. 20:**  Plaintiff fails to actually dispute this fact because Plaintiff's alleged "dispute" of this fact is unsupported by the evidence in the record.  Officer Calixte testified that he called medical a second time and informed Plaintiff that he called medical again.  *See* Exh. E 47:16-24; 48:20-22; 49:6-12.  Officer Calixte's testimony is admissible evidence.  No genuine dispute of fact is created merely because there is no additional documentary evidence in the record corroborating Officer Calixte's testimony that he made this phone call.  In addition, this fact is not disputed by Lieutenant Metzger.  Nowhere in the testimony referenced in Plaintiff's response does Lieutenant Metzger deny that she told Officer Calixte to call medical.  *See* Pl.'s Ex. 3.  Thus, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 21

Plaintiff appeared fine to Officer Calixte because he was sitting in the common area talking to other inmates.  *Id.* at 50:6-15.

*Plaintiff's Response:  Plaintiff disputes this assertion. Given that Plaintiff was hunched over, curled up, and unable to walk; and that he was vomiting blood and supposedly was numb on his left side, Plaintiff disputes that he would have "appeared fine to Officer Calixte." Mirvis 53:16-24, 57:2-6; Pl. Ex. 7. Plaintiff also clarifies that the cited testimony*

13

*relates to when Calixte saw, and spoke to, Plaintiff the second time. Calixte 49:6-16, 50:6-15, 48:20-22.*

**Defendants' Response to Undisputed Fact No. 21:**  Plaintiff fails to actually dispute this fact.  While Plaintiff stated that he was vomiting blood, Plaintiff never vomited in front of Officer Calixte.  In addition, Plaintiff's alleged symptoms that "he couldn't stand up, was curled up, and couldn't walk" were never communicated to Officer Calixte, let alone visible to him when Plaintiff walked over to Officer Calixte to ask that Officer Calixte call medical and later when Plaintiff was sitting in the day room and talking to other inmates. *See* Exh. E 38:21-24, 50:6-15.  Thus, this paragraph should be deemed admitted. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 22

A medical staff member showed up half an hour to an hour after the second call to medical. *See* Exh. A 56:23-25.

> *Plaintiff's Response:  Plaintiff disputes this assertion. There is no medical record of Plaintiff receiving any medical treatment on February 5, 2019, and the first record of any treatment is on February 6, 2019, at 2:40 pm. Nazryan Decl. ¶ 12-13; Pl. Ex. 7-8; Def. Ex. F, G. Further, Calixte did not recall ever seeing medical arrive and there are no logs confirming that medical attention was summoned or arrived for Plaintiff on February 5, 2019, when this information would and should have been logged. Calixte 25:24-28:17, 34:25-35:13, 39:13-23, 42:17-20, 44:10-16, 82:25-85:12; Nazryan Decl. 13; Pl. Ex. 9 (BOP 690, 695).*

**Defendants' Response to Undisputed Fact No. 22:**  Plaintiff's response merely presents Plaintiff's perspectives that he does not perceive there to be second or third sources of admissible evidence that corroborate this fact, and fails to actually dispute this fact or its substance.  Indeed, this fact comes directly from Plaintiff's deposition testimony.  *See* Exh. A 56:23-25 (Q: "How long after you had that exchange with [Metzger] did medical show up?" A: "Half an hour to an hour").  No genuine dispute of fact is created merely because there is no additional documentary evidence in the record corroborating this testimony.  Thus, this paragraph should be deemed admitted.  *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 23

The next day, February 6, 2019 at approximately 2:40 p.m., Plaintiff saw Dr. Bialor and reported that for the last four days he had crampy epigastric pain, nausea and vomiting that started about 20 minutes after eating anything solid.  *See* Modafferi Decl. Exh. F (Medical Record dated February 6, 2019, Bates No. Mirvis-BOP-000144).

*Plaintiff's Response:  Plaintiff admits that this assertion reflects some of the parts of the cited medical record, but clarifies that the medical record confirms that Plaintiff's symptoms were considerably more serious at the time.*

**Defendants' Response to Undisputed Fact No. 23:**  Plaintiff admits this fact and it should be deemed admitted.  Plaintiff's additional comment, without any citation to admissible evidence, is improper, an attempt to characterize the nature of his claimed symptoms, and does not create a genuine dispute as to this fact.

## Defendants' Undisputed Fact No. 24

Shortly thereafter, Plaintiff was transported to Kingsbrook Jewish Medical Center to rule out issues from a gallbladder surgery he had about a month earlier. *See* Exh. A 57:14-21; *see also* Modafferi Decl. Exh G (Medical Record from February 6, 2019, Bates No. Mirvis-BOP-000143).

> *Plaintiff's Response: Plaintiff disputes this assertion. Plaintiff purportedly was logged out of his "quarters" at 6:27 pm (5 hours after he requested medical treatment again on February 6 via email). Def Ex. B (BOP 619) (3rd line from the top); Pl. Ex. 8. Plaintiff was not seen until at least a few hours later, and not admitted until the following day (February 7, 2019). Def. Ex. H, I. Further, the records do not establish that he was sent to the hospital to "rule out" issues from his prior gallbladder surgery, though they do reflect the seriousness of his symptoms given his prior gallbladder surgery, which BOP staff knew about. Pl. Ex. 7; Def. Ex. B.*

**Defendants' Response to Undisputed Fact No. 24:** While Plaintiff's response includes the word "disputes," Plaintiff fails to actually dispute this fact by failing to present any admissible evidence that contradicts the stated fact. First, it is undisputed that Plaintiff was transported to Kingsbrook Jewish Medical Center. Second, the transport occurred shortly after his visit with Dr. Bialor at 3:42 p.m. (*see* Exh. G) because he was logged out of the MDC at 6:27 p.m. (*see* Exh. B) and had hospital laboratory results from initial bloodwork by 8:39 p.m. (*see* Exh. H). Finally, while the medical record does not explicitly say "rule out" that is certainly the implication from the record. *See* Exh. G. Thus, this fact should be deemed admitted.

## Defendants' Undisputed Fact No. 25

25.    Plaintiff was admitted to Kingsbrook Jewish Medical Center for in-patient treatment after he presented with vomiting and nausea associated with diarrhea. As per Plaintiff,

this started after he was placed on new medication for his psychiatric illness.  *See* Modafferi Decl.

Exh. H (Hospital Discharge Summary dated February 7, 2019, Bates No. Mirvis-BOP-000246).

> *Plaintiff's Response:*  *Plaintiff admits that this assertion is captured in the cited medical record, but disputes that this medical record accurately or completely captures what he experienced at the time, or the cause of his acute pain and the seriousness of the medical condition while at MDC.*

**Defendants' Response to Undisputed Fact No. 25:**  Plaintiff admits this fact and it should be deemed admitted.  Plaintiff's additional comment, without any citation to admissible evidence, is improper, an attempt to portray his claims in a different way, and does not create any genuine dispute as to this fact.  *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 26

Kingsbrook medical staff told Plaintiff he was having stomach issues because his gallbladder was removed and he has to get used to digesting fatty foods.  *See* Exh A. 61:7-13.

> *Plaintiff's Response:*  *Plaintiff admits that this was part of what he was told while at Kingsbrook, but was of course not the entire diagnosis or explanation he received.*

**Defendants' Response to Undisputed Fact No. 26:**  Plaintiff admits this fact (as it is taken directly from his deposition testimony) and it should be deemed admitted.  Plaintiff's additional comment, without any citation to admissible evidence, is improper, an attempt to inject a different meaning into his deposition testimony, and does not create any genuine dispute as to this fact.

## Defendants' Undisputed Fact No. 27

Plaintiff was diagnosed with acute gastroenteritis (stomach flu) and anxiety, and discharged back to the MDC. *See* Exh. H.

*Plaintiff's Response*: *Plaintiff admits that this assertion is what is captured, in part, on the cited medical record, but disputes that this record accurately or exhaustively captures what Plaintiff was experiencing at MDC prior to admission or the full extent of his symptoms and diagnosis.*

**Defendants' Response to Undisputed Fact No. 27:** Plaintiff admits this fact and it should be deemed admitted. Plaintiff's additional comment, without any citation to admissible evidence, is improper, an attempt to characterize prior testimony given under oath, and does not create any genuine dispute as to this fact. *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

**Defendants' Undisputed Fact No. 28**

28.    Doctors at Kingsbrook recommended that Plaintiff increase his fluid intake and prescribed Nexium and Zoloft.[4]  *See* Exh. H; *see also* Modafferi Decl. Exh. I (Hospital Discharge Summary dated February 7, 2019, Bates No. Mirvis-BOP-000248).

*Plaintiff's Response*:  *Plaintiff admits that these were the recommendations that were captured in the cited medical reports.*

**Defendants' Response to Undisputed Fact No. 28:**  Because Plaintiff concedes this fact, the fact should be deemed admitted.

**Defendants' Undisputed Fact No. 29**

---

[4] Nexium is used to treat certain stomach and esophagus problems, such as acid reflux and ulcers, and Zoloft is an antidepressant. *See* https://www.webmd.com/drugs/2/drug-20536/nexium-oral/details; https://www.webmd.com/drugs/2/drug-35/zoloft-oral/details.

29.     On February 10, 2019, following his return to the MDC, Plaintiff was medically assessed and had a normal physical examination.  *See* Modafferi Decl. Exh. J (Medical Record dated February 10, 2019, Bates No. Mirvis-BOP-000140).

*Plaintiff's Response*:  Plaintiff admits that this assertion is what is captured in the cited *medical record, but disputes that this record accurately or exhaustively captures what Plaintiff was experiencing at the time of the encounter.*

**Defendants' Response to Undisputed Fact No. 29:**  Plaintiff admits this fact and it should be deemed admitted.  Plaintiff's additional comment, again made without any citation to any admissible evidence, is improper, an attempt to color his claims, and does not create any genuine dispute as to this fact.  *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

<u>Plaintiff Failed to Exhaust Administrative Remedies</u>

**<u>Defendants' Undisputed Fact No. 30</u>**

The BOP maintains computerized indices of all administrative remedies filed by inmates at the institutional, Regional and Central Office levels, so that BOP can easily verify whether an inmate has exhausted his administrative remedies on a particular issue.  *See* Modafferi Decl. Exh. K ¶ 11 (Declaration of Michael Cardew).

*Plaintiff's Response*:  Plaintiff admits that BOP maintains a system, but disputes that the *tracking system accurately shows every <u>attempt</u> to seek administrative remedies, or that it captures all information regarding a request for an administrative remedy at any level.*

19

**Defendants' Response to Undisputed Fact No. 30:**  Plaintiff admits this fact and it should be deemed admitted.  Plaintiff's additional comment which purports to dispute the efficacy of the BOP's tracking system, is wholly without evidentiary basis, is at best improper speculation, and does not create any genuine dispute as to this fact.  *See* Local Rule 56.1(c) (stating that a paragraph will be deemed to be admitted for purposes of the motion unless *specifically controverted*) (emphasis added).

## Defendants' Undisputed Fact No. 31

Plaintiff has filed twenty-one (21) administrative remedy requests with the BOP at various levels of the administrative remedy process.  *Id.* at ¶ 13.

*Plaintiff's Response*:  *Disputed.[5] The only support for this assertion is the Cardew Declaration (dkt. 90-13), which Defendants submitted in support of their motion to dismiss (dkt. 62). Nazryan Decl. ¶ 11. The Cardew Declaration relied on two exhibits: Exhibit 1 is not relevant to exhaustion (dkt. 62-1), and Exhibit 2 purports to summarize administrative complaints that BOP received from Plaintiff (dkt. 62-2). The Cardew Declaration does not cite or produce the actual complaints, appeals, rejections, and communications regarding each grievance or complaint. Nazryan Decl. ¶ 11 (citing dkt. 62-2). There is no information in the Cardew Declaration about how the underlying information is inputted and where it is stored. Plaintiff requested this and other information regarding administrative exhaustion in his First RFP Requests No. 3-4, and no new information was produced (other than a reference to Exhibits 1-2 of the Cardew*

---

[5] Plaintiff submits that this objection/dispute is applicable to Assertions No. 31-42, which all rely on the text from the Cardew Declaration. Accordingly, Plaintiff incorporates this objection to each assertion in No. 31- 42, with any additional reasons for disputing the assertion as set forth therein.

*Declaration). Nazryan Decl. ¶ 11; Ex. 10. Plaintiff exchanged a complicated maze of assorted grievance documentation in his possession, custody, and control in discovery (bates-numbered Plaintiff 88-164) showing the difficulty of grieving or appealing any issue, but these were also not included on the pre-motion request. Nazryan Decl. ¶ 11. Defendants did not question Plaintiff about his efforts to exhaust administrative remedies at his deposition. Id.*

*Thus, on Defendants' record, it is simply impossible to assess the relevant issues on administrative exhaustion (specifically, whether the purported grievance procedures were "available" under Ross v. Blake, 578 U.S. 632, 643-44 (2016) and to what extent any of the claims in the Cardew Declaration are accurate. Plaintiff reserves the right to offer a declaration attesting to the "unavailability" of such grievance procedures, and to rely on his own documents exchanged in discovery, in opposition to any new documents or arguments offered by Defendants on summary judgment or in any amended, supplemented, or new 56.1 Statement.*

*Thus, while Plaintiff admits that this assertion comes (nearly* <u>*verbatim*</u>*) from the Cardew Declaration, it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

**Defendants' Response to Undisputed Fact No. 31:** Plaintiff fails to actually dispute this fact. The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion. *See* Exh. K. In addition, a printout of the record of all of the administrative remedy requests that Plaintiff had filed from the BOP's database was attached to the Declaration.

Plaintiff's suggestions, again unsupported by competent evidence in the record, fail to dispute this fact.  The BOP's administrative remedy record establishes that Plaintiff clearly knew how to file administrative remedies (he filed 21 of them) yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case. Plaintiff also failed to depose the declarant during discovery.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 32**

Of these 21 requests, five (5) were unrelated to the allegations in the Amended Complaint. *Id.* at ¶ 14.

*Plaintiff's Response*:  *For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly <u>verbatim</u>) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

**Defendants' Response to Undisputed Fact No. 32:**  Again, Plaintiff's unsupported contentions fail to meet the evidentiary burden necessary to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration, which Plaintiff does not refute.  As the documentary evidence of record clearly establishes that Plaintiff knew how to file administrative remedies, and did so nearly two dozen times, the evidentiary record also establishes that Plaintiff failed to file any remedies for the alleged deliberate indifference

to his medical needs at issue in this case.  Plaintiff also failed to depose the declarant during discovery.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 33**

Remedy Number 931884-F1 was received at the institutional level on February 26, 2018, and pertained to an assault by another inmate.  Plaintiff received a response from the institution, and the remedy was closed on April 12, 2018.  *Id.* at ¶ 15.

*Plaintiff's Response:*  *For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly* <u>*verbatim*</u>*) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

**Defendants' Response to Undisputed Fact No. 33:**  While Plaintiff insets the word "dispute" in his response, Plaintiff fails to meet his evidentiary burden in a manner that actually dispute this fact.  Other than Plaintiffs' bald assertion that the fact is not supported, there is nothing to contest this fact.  Further, Plaintiff's assertion is inaccurate. The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration.  Having engaged in the administrative remedy process 21 times, Plaintiff clearly knew how to file administrative remedies but still failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Moreover, despite Plaintiff's unsupported protestations regarding the Cardew

23

Declaration, Plaintiff has no basis to challenge the declaration because Plaintiff chose not to depose the declarant during discovery.

For these reasons, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 34**

Plaintiff then sent four requests to the Regional Office that were related to Remedy No. 931884-F1 (Nos. 931884-R1 through R4) between April and May 2018. These remedy requests were rejected for failure to submit required documentation; Plaintiff never re-submitted a corrected request and never submitted a request to the Central Office. *See* Exh. K at ¶ 15.

> *Plaintiff's Response: For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual.*

**Defendants' Response to Undisputed Fact No. 34:** Plaintiff fails to actually dispute this fact. The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion. *See* Exh. K. In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration. Plaintiff clearly knew how to file administrative remedies (he filed 21 of them) yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case. Plaintiff also failed to depose the declarant during discovery. Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 35**

Remedy Number 969216-F1 was received at the institutional level on February 27, 2019, and consisted of a complaint against a staff member.  Plaintiff received a response from the institution, and the remedy was closed on March 20, 2019.  *Id.* at ¶ 16.

> *Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

**Defendants' Response to Undisputed Fact No. 35:**    In addition to the Cardew Declaration, there is a printout of the administrative remedy requests that Plaintiff filed with the BOP from the BOP's database that is submitted in support of this fact.  Other than the allegation which cites no evidence whatsoever, Plaintiff fails to dispute this fact.  The declarant has relevant knowledge and the relied-upon Declaration is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  The record is clear that Plaintiff filed 21 administrative remedies and failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Plaintiff's failure to depose the declarant during discovery further undermines the unsupported "dispute" in this case.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 36**

Plaintiff then sent a remedy request related to Remedy Number 969216-F1 to the Regional Office on April 5, 2019.  The Regional Office rejected this remedy request because three of the

25

four pages were illegible.  Plaintiff never resubmitted his request to the Regional Office after April 2019 and never submitted a remedy request to the Central Office.  *Id.*

> *Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly <u>verbatim</u>) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual.*

**Defendants' Response to Undisputed Fact No. 36:**  Plaintiff fails to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration.  Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual.

In sum, this fact should be deemed admitted.

## Defendants' Undisputed Fact No. 37

To the extent the remaining nine (9) requests pertain to the allegations raised in the Amended Complaint, none were filed timely, and each request was rejected at each level to which it was submitted.  *Id.* at ¶¶ 17-20.

> *Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly <u>verbatim</u>) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

*Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual.*

**Defendants' Response to Undisputed Fact No. 37:**  Plaintiff fails to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration.  Plaintiff clearly knew how to file administrative remedies (he filed 21 of them) yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Plaintiff also failed to depose the declarant during discovery.  Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual.

In sum, this fact should be deemed admitted.

## Defendants' Undisputed Fact No. 38

Specifically, the remedy requests pertained to events that occurred between July and October 2017 and were filed in or after June 2018, which caused each of these requests to be received between eight (8) and 11 months late.  *See* Exh. K at ¶¶ 17-20; 28 C.F.R. § 542.14(a).

*Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual.*

27

**Defendants' Response to Undisputed Fact No. 38:** While Plaintiff insets the word "dispute" in his response, Plaintiff fails to meet his evidentiary burden in a manner that actually dispute this fact. Other than Plaintiffs' bald assertion that the fact is not supported, there is nothing to contest this fact. Further, Plaintiff's assertion is inaccurate. The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion. *See* Exh. K. In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration. Having engaged in the administrative remedy process 21 times, Plaintiff clearly knew how to file administrative remedies but still failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case. Moreover, despite Plaintiff's unsupported protestations regarding the Cardew Declaration, Plaintiff has no basis to challenge the declaration because Plaintiff chose not to depose the declarant during discovery. Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual.

For these reasons, this fact should be deemed admitted.

## Defendants' Undisputed Fact No. 39

Each rejected administrative remedy request was returned to Plaintiff with information about the reason for the rejection, how to cure the defects, and where to resubmit the request. *See* Exh. K at ¶¶ 17-20.

> *Plaintiff's Response: For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed.*

28

*Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual and the information regarding curing the defects was unintelligible or impossible to correct.*

**Defendants' Response to Undisputed Fact No. 39:**  Again, Plaintiff fails to actually dispute this fact.  The information comprising this fact (and a printout from the BOP's database) is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  Plaintiff clearly knew how to file administrative remedies yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Plaintiff also failed to depose the declarant during discovery.  Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual or that curing was unintelligible or impossible.  To the contrary, the BOP gave Plaintiff extra chances at exhausting remedies.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 40**

In particular, Plaintiff was advised that his requests could be considered if he submitted documentation excusing the lateness of the requests.  *See id.*

*Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual and the information regarding curing the defects was unintelligible or impossible to correct.*

**Defendants' Response to Undisputed Fact No. 40:**  As before, Plaintiff fails to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration.  Plaintiff simply failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual or that curing was unintelligible or impossible.  To the contrary, the BOP gave Plaintiff extra chances at exhausting remedies.

In sum, this fact should be deemed admitted.

**Defendants' Undisputed Fact No. 41**

In each case, Plaintiff failed to cure the defects, including by submitting the required, specified information.  *See id.*

*Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly verbatim) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual and the information regarding curing the defects was unintelligible or impossible to correct.*

**Defendants' Response to Undisputed Fact No. 41:**  Again, Plaintiff fails to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with relevant knowledge and is admissible evidence for purposes of a summary

judgment motion.  *See* Exh. K.  In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration.  Plaintiff knew how to file administrative remedies (he filed 21 of them) yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case.  Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual or that curing was unintelligible or impossible.  To the contrary, the BOP gave Plaintiff extra chances at exhausting remedies.

In sum, this fact should be deemed admitted.

## Defendants' Undisputed Fact No. 42

As a result of Plaintiff's failures to provide the required information specified in the rejected requests, or to elevate his requests to the highest level of administrative review available, *i.e.*, the Central Office, Plaintiff has failed to exhaust any of his administrative remedies.  *See id.* at ¶¶ 17-21.

> *Plaintiff's Response:  For the same reasons as in Response to No. 31, Plaintiff admits that this assertion comes (nearly <u>verbatim</u>) from the Cardew Declaration, but it is undisputed that the Cardew Declaration is not supported with the relevant, admissible, materials upon which Defendants purportedly rely—and thus, the underlying assertion is disputed. Plaintiff further disputes the underlying assertion because the stated reason for rejection/denial was pretextual and the information regarding curing the defects was unintelligible or impossible to correct.  Finally, Plaintiff rejects this assertion, which is a legal conclusion, and not supported by any evidence.*

**Defendants' Response to Undisputed Fact No. 42:**  Plaintiff fails to actually dispute this fact.  The information comprising this fact is sworn to in a Declaration by someone with

relevant knowledge and is admissible evidence for purposes of a summary judgment motion. *See* Exh. K. In addition, a printout of the administrative remedy requests from the BOP's database was attached to the Declaration. Plaintiff clearly knew how to file administrative remedies (he filed 21 of them) yet he failed to file any remedies for the alleged deliberate indifference to his medical needs at issue in this case. Plaintiff also failed to depose the declarant during discovery. Additionally, Plaintiff has no evidence to suggest that the rejection was pretextual or that curing was unintelligible or impossible. To the contrary, the BOP gave Plaintiff extra chances at exhausting remedies. Because Plaintiff had not submitted the documents required to exhaust, which is the factual predicate to a determination of exhaustion, he failed to legally exhaust his administrative remedies here. In sum, this fact should be deemed admitted.

### RESPONSE TO PLAINTIFF'S PURPORTED UNDISPUTED MATERIAL FACTS

*Plaintiff's Purported Fact 43:*      *Plaintiff requested medical attention on July 12, 2017, at approximately 8:11 am, via Trulincs email. Pl. Ex. 4 (BOP 577).*

**<u>Defendants' Response to Proposed Fact No. 43</u>**:

Disputed as not material to this motion or any *Bivens* claim against Lieutenants Pope and Metzger because the email for medical attention was sent to medical staff -- not Defendants. *See* Pl. Ex 4 (BOP 577); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole). What is material and undisputed is: the first time Plaintiff ever spoke to Lieutenants Pope and Metzger was about 6 hours later, around 2 p.m. on

July 12, 2017, and the Lieutenants sent Plaintiff for medical treatment about 20 minutes after speaking with him.  *See* Exh. A 37:10-17, 38:22-24, 39:20-40-5.

*Plaintiff's Purported Fact 44:        The request for medical attention stemmed from an attack that occurred either the night before (July 11) or 4 nights prior (July 7). Mirvis 29:10-19; 30:8-32:6; Def Ex. C (dkt. 90-5) at p. 3. 30; Pl. Ex. 9 at pages 1-3, 6-8 (BOP 686-88, 691-93); Pl. Ex. 5 (BOP 700).*

**Defendants' Response to Proposed Fact No. 44**:

Disputed as not material to this motion because the referenced e-mail is not material to the *Bivens* claim against Lieutenants Pope and Metzger as the email for medical attention only was sent to medical staff -- not Defendants.  *See* Pl. Ex 4 (BOP 577); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole).  What is material and undisputed is:  the first time Plaintiff ever spoke to Lieutenants Pope and Metzger was about 6 hours later, around 2 p.m. on July 12, 2017, and the Lieutenants sent Plaintiff for medical treatment about 20 minutes after speaking with him.  *See* Exh. A 37:10-17, 38:22-24, 39:20-40-5.

*Plaintiff's Purported Fact 45:        Plaintiff had been extorted and attacked for approximately a month prior (from June through July 2017), and Plaintiff had told BOP staff about this. Mirvis 29:10-19; 30:8-32:6; Def Ex. C (dkt. 90-5) at p. 3. 30.*

**Defendants' Response to Proposed Fact No. 45**:

Disputed as not material to this motion.  Plaintiff alleges that he was assaulted by two inmates on his unit and claims that he told the unit officer – not any of the Defendants in this case – about what was happening.  *See* Plaintiff's Exh. 1 29:5-9, 30:23-32:25; *see also* Exh. A 37:10-17 (Plaintiff testifying that July 12, 2017 at approximately 2 p.m. was the first time that he had

ever interacted with Lieutenants Pope and Metzger); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole).

*Plaintiff's Purported Fact 46:*        *The attack caused Plaintiff to experience extreme pain to his mouth and ribs, and he remained in this extreme physical and mental pain while he waited to be seen for medical treatment. Mirvis 38:4-5; 44:15-45:10, 63:6-15, 67-68.*

**Defendants' Response to Proposed Fact No. 46:**

Disputed.  Plaintiff claims he was "jumped" on July 12, 2017 around 2 p.m., right before he was taken to the Special Investigative Services (SIS) Office.  *See* Plaintiff's Exh. 1 30:23-32:6. In the SIS office, Plaintiff had photographs taken of some bruises and redness to his chest and hands.  *See* Exh. A 35:22-25; 36:2-5, 11-13.  Plaintiff had no other visible injuries.  *Id.* at 39:15-19.  Twenty minutes later, Plaintiff saw MDC medical staff (*see id.* at 38:22-24, 39:20-40-5) and a nurse noted that Plaintiff had no respiratory distress, old bruises on his left arm, tenderness to left rib area, and no other marks/abrasion or injuries were observed.  *See id.* 41:14-23; 42:17-43:2; *see also* Modafferi Decl. Exh. D (Medical record dated July 12, 2017, Bates No. Mirvis-BOP-00028-29).

Similarly, in addition to the MDC medical records which state that Plaintiff had no other injuries, the evidence establishes that Plaintiff's complaints regarding his mouth/tooth pain stemmed from an infected tooth.  *See* Plaintiff's Exh. 1 45:15-24.  MDC Dental Services saw Plaintiff and recommended a surgical extraction of the tooth.  *Id.* at 45:25-48-17.  Plaintiff refused the recommended treatment and signed a refusal of treatment form.  *Id.*

*Plaintiff's purported Fact 47:*    *Plaintiff spoke to Lieutenant Pope and Metzger about what happened, but both were more interested in Plaintiff's pending criminal case than in the attack or the pain he was experiencing. Mirvis 36:4-10, 37:18-22, 38:13-21, 52:22-53:5.*

34

**Defendants' Response to Proposed Fact No. 47**:

Disputed in part.  Defendants admit that Lieutenants Metzger and Pope asked Plaintiff what happened on the unit for purposes of an investigation into Plaintiff's allegations.  *See* Exh A 35:22-25; 36:2-5, 11-13; 52:11-16; *see also* Exh. C.  However, the remainder of the sentence (namely, Plaintiff's characterizations and speculation regarding the two Lieutenants' thought processes) is disputed.  Lieutenants Pope and Metzger did not care about Plaintiff's criminal charges, their concern was keeping the people in the institution safe.  *See* Supplemental Modafferi Declaration at Exhibit L 196:4-197:11 (relevant portions of Lieutenant Pope's deposition transcript) and Exhibit M 61:14-17 and 64:6-65:5 (relevant portions of Lieutenant Metzger's deposition transcript).  The Lieutenants sent Plaintiff to medical only 20 minutes after meeting with him.  *See* Exh. A 38:22-24, 39:20-40-5.

*Plaintiff's Purported Fact 48:      Metzger told Plaintiff that he "should learn to fight." Pl. Ex. 7.*

**Defendants' Response to Proposed Fact No. 48**:

Disputed.   Proposed Fact No. 48 merely sets forth Plaintiff's contentions and mischaracterizes the record.  Indeed, this proposed fact is not undisputed as Lieutenant Metzger specifically denied ever saying that to Plaintiff.  *See* Supplemental Modafferi Decl. at Exhibit M 68:22-25, 90:6-20.

*Plaintiff's Purported Fact 49:      Plaintiff was confined in a SHU for nearly a month after the July 2017 incident— i.e., from approximately July 12 through August 9, 2017. Def. Ex. B (dkt. 90-4); Mirvis 49:3-10.*

**Defendants' Response to Proposed Fact No. 49**:

Disputed as not material to this motion because Plaintiff was transferred to the SHU pending his protective custody assessment, so that MDC staff could determine any potential threats and ensure that he is sent to a housing unit where he would be safe.  *See* Exh. C, p.2; *see also* Supplemental Modafferi Decl. at Exhibit M 43:10-22.

*Plaintiff's Purported Fact 50:*        *Plaintiff remained in extreme pain for this month in the SHU, and continued to feel extreme pain in his mouth and ribs. Mirvis 71:2-7.*

**Defendants' Response to Proposed Fact No. 50**:

Disputed.  When Plaintiff saw MDC medical staff on July 12, 2017, he was advised to contact the MDC's medical staff with any questions or concerns and at that time he verbalized an understanding, and was agreeable with the proposed plan of care.  *See* Exh. A 44:12-14; *see also* Exh. D.  Plaintiff received pain medication after this visit with the MDC's medical staff.  *See* Exh. A 43:18-21.

In addition, as noted above, Plaintiff's complaints regarding his mouth/tooth stemmed from an infected tooth.  *See* Plaintiff's Exh. 1 45:15-24.  Although MDC Dental Services saw Plaintiff and recommended a surgical extraction of the tooth, Plaintiff refused the recommended treatment and signed a refusal of treatment form.  *Id.* at 45:25-48-17.

*Plaintiff's Purported Fact 51:*        *Plaintiff requested medical treatment by email on February 4, 2019, at approximately 10:29 am, stating "my stomach is killing [I] was throwing up blood and my left side is numb[.]" Pl. Ex. 6 (BOP 617).*

**Defendants' Response to Proposed Fact No. 51**:

Disputed as not material to this motion and is not material to the *Bivens* claim against Lieutenant Metzger and Officer Calixte because the email for medical attention was sent to medical staff and was never sent to the Defendants.  *See* Pl. Ex 6 (BOP 617); *see also Ziglar v. Abbasi*, 137

S. Ct. 1843, 1860 (2017) ("a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole). What is material and undisputed is: the first time Plaintiff ever complained to Officer Calixte and Lieutenant Metzger about this alleged ailment was on February 5, 2019 and Officer Calixte called medical staff twice to request treatment for Plaintiff. *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 52:*        *There is no medical record showing Plaintiff receiving any medical treatment on February 4, 2019. Nazryan Decl. ¶ 12.*

**Defendants' Response to Proposed Fact No. 52**:

Disputed factually and as not material to this motion. First, Plaintiff saw nurse Ahiable for medication on February 4, 2019 at 8:19 p.m. and such encounter is documented in the medical record. *See* Supplemental Modafferi Decl. at Exhibit N (BOP 198). Second, Plaintiff's contention is merely an attempt to color his claims and is not material to the *Bivens* claim against Lieutenant Metzger and Officer Calixte because they first learned of Plaintiff's complaints on February 5, 2019. *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others" or the knowledge or actions of an agency as a whole).

*Plaintiff's Purported Fact 53:*        *Plaintiff requested medical treatment by email on February 5, 2019, at approximately 2:38 pm, after (and explaining) the interaction with Metzger and Calixte, stating that he was "vomiting blood", and that his "left side feels numb," that he had previously had gallbladder surgery, and that he was denied treatment by, and mocked and laughed at by, Metzger. Pl. Ex. 7 (BOP 618).*

**Defendants' Response to Proposed Fact No. 53**:

Disputed.  First, on February 5, 2019, at approximately 1:38 p.m., Plaintiff emailed the Warden to complain about Lieutenant Metzger.  *See* Pl. Exh. 7 (BOP 618).  Second, Lieutenant Metzger denied mocking or laughing at Plaintiff.  *See* Supplemental Modafferi Decl. at Exhibit M 69:2-8, 90:2-5.  Third, Plaintiff's contention is factually inaccurate and disputed because on that day, February 5, 2019, evidence in the record establishes that Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 54:*          *There is no medical record showing Plaintiff receiving any medical treatment on February 5, 2019. Nazryan Decl. ¶ 12.*

**Defendants' Response to Proposed Fact No. 54**:

Disputed.  Plaintiff saw nurse Ahiable for medication on February 5, 2019 at 7:27 p.m. and, again, such encounter is documented.  *See* Supplemental Modafferi Decl. at Exhibit N (BOP 198).

*Plaintiff's Purported Fact 55:*          *Metzger laughed at and mocked Plaintiff when she met with him on February 5, 2019, and stated that Mirvis "need[s] medical attention for my head." Pl. 7.*

**Defendants' Response to Proposed Fact No. 55**:

Disputed, contradicted by the evidentiary record, and mischaracterizes documented evidence.  Lieutenant Metzger denied ever saying that to Plaintiff.  *See* Supplemental Modafferi Decl. at Exhibit M 69:2-8, 90:2-5.

*Plaintiff's Purported Fact 56:*          *Plaintiff requested medical treatment by email on February 6, 2019, at approximately 1:25 pm, stating "for 3 days now [I've] been asking for help. Everyone*

*I emailed has ignored me or officers are mocking me. This is inhumane. I'm in a lot of pain." Pl.*
*Ex. 8 (BOP 567).*

**Defendants' Response to Proposed Fact No. 56**:

Disputed.  First, on February 6, 2019, at approximately 1:25 p.m., Plaintiff emailed the non-party Associate Warden overseeing custody to complain about not receiving medical attention.  *See* Pl. Exh. 8 (BOP 567).  Second, Plaintiff's claims of being mocked are disputed. *See* Supplemental Modafferi Decl. at Exhibit M 69:2-8, 90:2-5.  Third, Plaintiff's contention about being ignored is inaccurate because the day before, February 5, 2019, Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 57:*        *On February 5, 2019, when Calixte radioed down to*
*medical, he was placed on standby and never was able to offer any details about what Plaintiff*
*was experiencing. Calixte 39:24-41:8.*

**Defendants' Response to Proposed Fact No. 57**:

Disputed as not material to this motion.  Plaintiff's contention is merely an attempt to color his claim.  Officer Calixte called MDC medical for Plaintiff to receive medical attention and also called on the radio so that MDC medical staff would return the call.  *See* Plaintiff's Exh. 2 39:24-41:8.  It is not material whether Officer Calixte was able to provide Plaintiff's complaint to medical staff over the phone, as opposed to over the radio.  The fact is that Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 58:*          *Calixte never followed up with medical after he purportedly called down the second time, and never had any other conversations with Plaintiff or his request for medical attention thereafter. Calixte 51:3-6, 51:7-18, 42:10-16.*

**Defendants' Response to Proposed Fact No. 58**:

Disputed.   Plaintiff's contention is merely an attempt to color his claim and mischaracterizes the record.   Officer Calixte testified that he does not recall having any other conversations with medical staff after he twice called medical staff for someone to come to see Plaintiff on the unit.   *See* Plaintiff's Exh. 2 42:10-16; *see also* Exh. E 38:5-9,47:16-24; 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 59:*          *Calixte did not consider trying to expedite the request for medical treatment or hitting his body alarm. Calixte 60:11-61:18, 62:20-63:11.*

**Defendants' Response to Proposed Fact No. 59**:

Disputed and mischaracterizes the record.   Officer Calixte testified that hitting his body alarm is used when an inmate is having a medical emergency or is in extreme pain.   *See* Plaintiff's Exh. 2 60:11-61:18.   There was no reason for Officer Calixte to do that here because Plaintiff appeared fine and was sitting in the common area talking to other inmates.   *See* Exh. E 50:6-15.

*Plaintiff's Purported Fact 60:*          *Metzger did not personally do anything to request medical treatment for Plaintiff.  Calixte 61:14-62:15.*

**Defendants' Response to Proposed Fact No. 60**:

Disputed and mischaracterizes the record.   Lieutenant Metzger did assist in requesting medical attention for Plaintiff because she instructed Officer Calixte to call medical again for Plaintiff.   *See* Exh. E 47:16-48:13.   Additionally, the portion of Officer Calixte's transcript cited

by Plaintiff shows that Officer Calixte *did not recall* if Lieutenant Metzger personally called medical staff. *See* Plaintiff's Exh. 2 61:14-62:15 (emphasis added).

*Plaintiff's Purported Fact 61:      Metzger never followed up with Calixte about Plaintiff's medical request. Calixte 50:24-51:2.*

**Defendants' Response to Proposed Fact No. 61**:

Disputed.  Officer Calixte called the MDC's medical staff to request treatment for Plaintiff (*see* Exh. A 53:16-24; 54:11-14; 54:24-56:5; *see also* Modafferi Decl. Exh. E 38:5-9) and Lieutenant Metzger came to the unit and instructed Officer Calixte to call medical again for Plaintiff.  *See* Exh. A 54:24-56:5; 55:10-22; *see also* Exh. E 47:16-48:13.

*Plaintiff's Purported Fact 62:      Calixte's practice, and apparently the directive, was to effectively log anything that an inmate requested or alerted to the housing unit officer, including any request for medical attention. Calixte 26:16-27:10; see also 25:24-28:17 (general logging practices).*

**Defendants' Response to Proposed Fact No. 62**:

Disputed as not material to the motion and mischaracterizes the record.  A unit logbook, which is in hardcopy and electronic, "tracks inmate property, tracks incidents throughout the institution, tracks contraband, and tracks inmate activities within the housing and work areas." *Shorter v. Samuels*, 2021 U.S. Dist. LEXIS 49892, at *17 (M.D. Pa. Mar. 17, 2021).  Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23), but the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019.  *See* Supplemental Modafferi Decl. Exhibit O (Declaration of John Wallace). However, not being able to locate the hardcopy unit logbook for February 5, 2019 does not change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh.

A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 63:*          *Requests for medical attention would be logged in the housing unit area logbook (whether physical or electronic), as would a lieutenant coming to a housing unit, and that would remain with the housing unit area. Calixte 25:24-28:17.*

**Defendants' Response to Proposed Fact No. 63**:

Disputed as not material to the motion and mischaracterizes the record.  A unit logbook, which is in hardcopy and electronic, "tracks inmate property, tracks incidents throughout the institution, tracks contraband, and tracks inmate activities within the housing and work areas." *Shorter*, 2021 U.S. Dist. LEXIS 49892, at *17.  Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23), but the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019.  *See* Supplemental Modafferi Decl. Exhibit O.  However, not being able to locate the hardcopy unit logbook for February 5, 2019 does not change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 64:*          *It was proper procedure to log when an inmate went down or came back up to medical, or when medical came to the unit. Calixte 34:25-35:13.*

**Defendants' Response to Proposed Fact No. 64**:

Disputed as not material to the motion and mischaracterizes the record.  A unit logbook, which is in hardcopy and electronic, "tracks inmate property, tracks incidents throughout the institution, tracks contraband, and tracks inmate activities within the housing and work areas." *Shorter*, 2021 U.S. Dist. LEXIS 49892, at *17.  Officer Calixte testified that he likely would have

logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23), but the BOP has not

been able to find the Unit 84 hardcopy logbook for February 5, 2019. *See* Supplemental Modafferi

Decl. Exhibit O.  However, not being able to locate the hardcopy unit logbook for February 5,

2019 does not change the fact that Officer Calixte called medical staff twice to request treatment

for Plaintiff (*see* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9,

47:16-48:13, 48:20-22; 49:6-12) and that nurse Ahiable saw Plaintiff on February 5, 2019 at 7:27

p.m.  *See* Supplemental Modafferi Decl. at Exhibit N (BOP 198).

*Plaintiff's Purported Fact 65:*        *Calixte believes it would have been logged if someone received medical treatment inside or outside the housing unit. Calixte 82:25-85:12.*

**Defendants' Response to Proposed Fact No. 65**:

       Disputed as mischaracterizing the record.  Officer Calixte testified that he likely would

have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23) and medical

treatment that took place on the unit (*see* Plaintiff's citation), but the BOP has not been able to find

the Unit 84 hardcopy logbook for February 5, 2019.  *See* Supplemental Modafferi Decl. Exhibit

O.  However, not being able to locate the hardcopy unit logbook for February 5, 2019 does not

change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff.

*See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13,

48:20-22; 49:6-12.

*Plaintiff's Purported Fact 66:*        *If a patient was seen by medical in his cell—to the extent such an encounter was not logged—there would not be any meaningful medical treatment provided. Calixte 84:4-12.*

**Defendants' Response to Proposed Fact No. 66**:

Disputed as mischaracterizing the record. A unit logbook, which is in hardcopy and electronic, "tracks inmate property, tracks incidents throughout the institution, tracks contraband, and tracks inmate activities within the housing and work areas." *Shorter*, 2021 U.S. Dist. LEXIS 49892, at *17. There is no evidence that the encounters with Plaintiff were not logged, to the contrary, Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23). The issue is not one of significance, but rather logistics as the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019. *See* Supplemental Modafferi Decl. Exhibit O. Despite Plaintiff's contention and the BOP's not being able to locate the hardcopy unit logbook for February 5, 2019 does not change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff (*see* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12) and that nurse Ahiable saw Plaintiff on February 5, 2019 at 7:27 p.m. *See* Supplemental Modafferi Decl. at Exhibit N (BOP 198).

*Plaintiff's Purported Fact 67:        Calixte would have logged if he subsequently spoke to medical about Plaintiff's medical request on February 5, 2019. Calixte 42:17-20.*

**Defendants' Response to Proposed Fact No. 67**:

Disputed as not material to the motion and as mischaracterizing the record. Here, Officer Calixte testified that he likely would have logged any requests for medical attention that Plaintiff may have made to him (Plaintiff's Exh. 2 39:13-23). Nevertheless, as noted above, although the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019, that does not support a conclusion that Plaintiff's encounters with the BOP's medical staff were not recorded in the logbook. *See* Supplemental Modafferi Decl. Exhibit O. Further, there is undisputed evidence of Plaintiff's medical needs being addressed, as the BOP's inability to locate the hardcopy unit

44

logbook for February 5, 2019 does not change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff. *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 68:*    *Calixte would likely have logged Plaintiff's request for medical attention. Calixte 39:13-23.*

**Defendants' Response to Proposed Fact No. 68**:

Admitted. Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention. Plaintiff's Exh. 2 39:13-23.

*Plaintiff's Purported Fact 69:*    *Calixte did not recall medical coming up to the housing area anytime on February 5, 2019, and would have logged such an event if it had occurred. Calixte 44:10-16.*

**Defendants' Response to Proposed Fact No. 69**:

Admitted. Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23) and medical staff coming to the unit (*see* Plaintiff's citation). However, not being able to locate the hardcopy unit logbook for February 5, 2019 does not change Officer Calixte's sworn testimony.

*Plaintiff's Purported Fact 70:*    *The only TruScope entries relating to Plaintiff from February 4-6, 2019, is a note showing that he was transported to the hospital on February 6, 2019. Pl. Ex. 9 at p. 5, 10 (BOP 690, 695).*

**Defendants' Response to Proposed Fact No. 70**:

Disputed as mischaracterizing the record. TruScope, which is the electronic logbook, only contains an entry relating to Plaintiff dated February 6, 2019 and does not contain entries for February 4 or 5. *See* Plaintiff's Ex. 9 at p. 5, 10 (BOP 690, 695). However, Officer Calixte testified

that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23), but the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019. *See* Supplemental Modafferi Decl. Exhibit O.  However, not being able to locate the hardcopy unit logbook for February 5, 2019 does not change the fact that Officer Calixte called medical staff twice to request treatment for Plaintiff.  *See* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12.

*Plaintiff's Purported Fact 71:        Other than the parties' testimony and Plaintiff's emails (Pl. Ex. 6-8), there is no log or record that anyone at BOP requested or provided medical treatment for Plaintiff at any time between February 4, 2019 at 10:29 am until February 6, 2019 at 2:40 pm—i.e., a period of more than 52 hours. Nazryan Decl. ¶ 13.*

**Defendants' Response to Proposed Fact No. 71:**

Disputed as mischaracterizing the evidentiary record.  Officer Calixte testified that he likely would have logged Plaintiff's request for medical attention (Plaintiff's Exh. 2 39:13-23), but the BOP has not been able to find the Unit 84 hardcopy logbook for February 5, 2019.  *See* Supplemental Modafferi Decl. Exhibit O.  Further, there is a "record" of Officer Calixte's testimony that he called medical staff twice to request treatment for Plaintiff (*see* Exh. A 53:16-24; 54:11-14; 54:24-56:5; Exh. E 36:11-22; 37:22-25, 38:5-9, 47:16-48:13, 48:20-22; 49:6-12) and that nurse Ahiable saw Plaintiff on February 5, 2019 at 7:27 p.m.  *See* Supplemental Modafferi Decl. at Exhibit N (BOP 198).

Dated:  Brooklyn, New York
        March 28, 2023

BREON PEACE
United States Attorney
Eastern District of New York
*Attorney for Defendants*
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

By:  _____/s/_____
     Matthew Modafferi
     Kimberly Francis
     Assistant U.S. Attorneys
     718-254-6229 / 6147
     Matthew.modafferi@usdoj.gov
     Kimberly.francis@usdoj.gov