UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RUSLAN MIRVIS,

                         Plaintiff,

        v.

HERMAN QUAY, Warden; ELEAZAR GARCIA,
Associate Warden; JONATHAN WHITE, Captain;
"JOHN" POE, Lieutenant; "JOHN" METZGER,
Lieutenant; "JOHN" CALIXTE, Correction Officer;
"JOHN DOE" #1-3, Correction Officers; "G."
GONZALEZ, Correction Officer; "JANE DOE,"
Correction Officer; AND MAURY "DOE,"
Counselor,

                       Defendants.

**MEMORANDUM AND ORDER**

19-CV-2573 (LDH) (VMS)

---

LASHANN DEARCY HALL, United States District Judge:

Ruslan Mirvis ("Plaintiff") brings the instant action asserting *Bivens* claims against

former Warden Herman Quay, Associate Warden Eleazar Garcia, Captain Jonathan White,

former Lieutenant Thomas Pope, Lieutenant Veronica Metzger, Senior Officer Specialist Pierre

Calixte, Correctional Counselor Lawrence Murray, and former Correctional Officer George

Gonzalez[1] (collectively, "Defendants") for violations of his rights, privileges, and immunities

under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

---

[1] Plaintiff also brings the instant action against Correctional Officer John Doe #1, Correctional Officer John Doe #2, Correctional Officer John Doe #3, and Correctional Officer Jane Doe. *See* (Am. Compl. ¶¶ 19, 21, ECF No. 26.) However, Plaintiff has not served these outstanding Defendants. Accordingly, the amended complaint is dismissed as to these defendants.

[2] In the alternative, Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 2–3, ECF No. 65.) The Court declines to entertain a motion for summary judgment.

## BACKGROUND[3]

### I.      June 6 – July 7, 2017 Sexual Assaults

Plaintiff was a pretrial detainee at MDC Brooklyn.  (Am. Compl. ¶ 9, ECF No. 26.)  On a daily basis, between June 6, 2017, and July 7, 2017, Plaintiff was sexually threatened, abused, and assaulted by two inmates in the J-72 housing area.  (*Id.* ¶ 28.)  During this period, the two inmates frequently used objects to sexually assault Plaintiff.  (*Id.* ¶ 33.)  Typically, one inmate would restrain Plaintiff while the other would beat him and insert an object into Plaintiff's anus.  (*Id.* ¶ 33.)  During this time, the same inmates demanded that Plaintiff direct his family to deposit money into their respective MDC Brooklyn commissary accounts.  (*Id.* ¶ 34.)  Plaintiff acquiesced to their demands out of fear, and, over time, Plaintiff directed his family to deposit thousands of dollars into the inmates' accounts.  (*Id.*)  Eventually, Plaintiff refused because his family could no longer afford any payments.  (*Id.* ¶ 35.)

On July 7, 2017, the two inmates attacked Plaintiff and sodomized him with a broomstick (the "July 7 attack").  (*Id.* ¶ 36.)  During the attack, Plaintiff screamed out to officers for help but did not receive a response.  (*Id.*)  Following the attack, Plaintiff returned to his cell and pushed the panic button.  (*Id.* ¶ 37.)  Correctional Officer ("C.O.") John Doe 1 arrived, and Plaintiff reported the attack to him.  (*Id.*)  Following, C.O. John Doe 1 informed Plaintiff he would "be right back" but did not return.  (*Id.*)  Throughout that evening, Plaintiff continued to cry out for help and eventually a correctional officer escorted Plaintiff to an "SIS location."  (*Id.* ¶ 38.)  There, Plaintiff informed Defendant Lt. Pope, the supervisor in charge of the SIS location, what had occurred and informed him of his need for urgent medical attention.  (*Id.*)  Defendant Lt.

---

[3] The following facts are taken from the amended complaint and are assumed to be true for the purposes of this memorandum and order.

Metzger was also present and mockingly told Plaintiff that he should "learn to defend himself." (*Id.* ¶¶ 39–40.)  Neither Defendants Lt. Pope or Lt. Metzger offered immediate medical or mental health care to Plaintiff, nor did they arrange for Plaintiff to receive such care.  (*Id.* ¶¶ 38, 40.)

Eventually, Plaintiff was escorted to a medical unit where pictures and X-Rays were taken of his injuries, and he was provided aspirin.  (*Id.* ¶ 41.)  Following, he was placed in a special housing unit ("SHU").  (*Id.*)  Plaintiff spent at least one month in the SHU, and during that time, Plaintiff repeatedly complained to C.O. John Doe 2 of continuing pain and swelling to his ribs and swelling of his mouth.  (*Id.* ¶ 42.)  C.O. John Doe 2 ignored Plaintiff's complaints.  (*Id.*)  A month later, Plaintiff was informed that he sustained three fractured ribs and needed an extraction of his tooth.  (*Id.* ¶ 43.)

Additionally, during the June 6, 2017, to July 7, 2017 period, Plaintiff informed C.O. Gonzalez approximately five to six times, Counselor Maury two to three times, and C.O. Jane Doe twice that he was being sexually abused and threatened by the two inmates.[4]  *(Id.* ¶ 48.)  In response, Defendant C.O. Gonzalez told Plaintiff that this is what happens in prison and suggested he beat his attackers with a "lock in a sock" next time they come after him.  (*Id.*)  Plaintiff also sent at least 85 emails to Defendants Warden Quay, Associate Warden Garcia, Cpt. White, and other MDC Brooklyn staff.  (*Id.* ¶ 49.)  Defendants failed to provide adequate responses to his emails, investigate the allegations, separate Plaintiff from his two attackers, or take any action to remedy the situation.  (*Id.* ¶ 50.)

According to the amended complaint, the two inmates who assaulted Plaintiff were known by Defendants to be violent gang members who were involved in other incidents while at MDC Brooklyn and no remedial action was taken.  (*Id.* ¶¶ 28-30.)  Specifically, Defendants were

---

[4] Plaintiff alleges that he also told several housing unit officers. (Am. Compl. ¶ 48.)

aware the two inmates extorted and sexually abused another inmate assigned to the J-72 unit.
(*Id.* ¶ 31.)  Nonetheless, no action was taken against the inmates.  (*Id.*)

**II.        January 27 – February 3, 2019 Power Outage**

From about January 27, 2019, through February 3, 2019, MDC Brooklyn underwent a
power outage.  (*Id.* ¶ 44.)  During that time, MDC Brooklyn did not have heat, hot water, or
electricity and Plaintiff was repeatedly denied medical care by the MDC staff.  (*Id.*)  On or about
February 5, 2019, Plaintiff reported to Defendants C.O. Calixte and Lt. Metzger that he was
experiencing numbness to his left side and that he had vomited blood.  (*Id.* ¶ 45.)  In response,
Defendant Lt. Metzger told Plaintiff, he was "sick in the head."  (*Id.*)  Plaintiff was eventually
taken to the hospital and diagnosed with a hole in his stomach and pinched nerve.  (*Id.* ¶ 46.)
Plaintiff was confined to the hospital for at least three days.  (*Id.*)

STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  A claim is facially plausible when the alleged facts allow the court to draw a
"reasonable inference" of a defendant's liability for the alleged misconduct.  *Id.*  While this
standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the
Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.
*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the
Court must merely determine whether the complaint itself is legally sufficient, and, in doing so,
it is well settled that the Court must accept the factual allegations of the complaint as true."  *Id.*
(citations omitted).

**DISCUSSION**

I.     **Failure to Exhaust**

Defendants urge the Court to dismiss the amended complaint on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1995 (the "PLRA").[5]  (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 23-25, ECF No. 65.)  The PLRA provides that a prisoner may not bring an action under federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Ross v. Blake*, the Supreme Court made clear that the exhaustion requirements of the PLRA were mandatory and only subject to limited exceptions.  *See* 136 S. Ct. 1850, 1856 (2016).  However, and of particular relevance here, the Supreme Court recognized that exhaustion can be mandated only where "[administrative] remedies [are] indeed [] 'available' to the prisoner."  *Id*.  Following *Ross*, the Second Circuit found that administrative remedies could be unavailable to inmates under three circumstances.  *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).  *First*, an administrative remedy is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*.  (quoting *Ross*, 136 S. Ct. at 1859).  *Second*, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Put differently, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id*. at 123–24 (quoting *Ross*, 136 S. Ct. at 1856).  *Third,* an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a

---

[5] Inconsistently, the Defendants state in their Reply Memorandum that they "do not argue that [P]laintiff had any pleading burden regarding exhaustion, nor do they seek dismissal under Rule 12(b)(6) in connection with [P]laintiff's failure to exhaust."  (Reply Mem. at 15.)

grievance process through machination, misrepresentation, or intimidation." *Id*. at 124 (quoting *Ross*, 136 S. Ct. at 1860).  Importantly, "failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement" and, thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Williams*, 829 F.3d at 122 (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  That said, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id*.  (citing *Jones*, 549 U.S. at 215).

Here, the Court declines to dismiss Plaintiff's claims for failure to exhaust.  Plaintiff's amended complaint does not itself contain any allegations that would make it clear that the PLRA exhaustion requirement was not satisfied.  Rather, the amended complaint alleges Plaintiff sent at least 85 emails to Defendants Warden Quay, Captain Garcia, Captain White, and numerous other MDC Brooklyn staff.  (Am. Compl. ¶ 49.)  Plaintiff further alleges the staff provided inadequate responses, failed to investigate, and failed to separate Plaintiff from his two attackers.  (*Id.* ¶ 50.)

## II.     Plaintiff's Deliberate Indifference Claims Under *Bivens*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court, for the first time, recognized a constitutional cause of action for damages against federal officers.  403 U.S. 388 (1971).  Specifically, the Supreme Court held that a plaintiff may sue federal officers in their individual capacities for violating her Fourth Amendment protection against unreasonable searches and seizures.  *Id*. at 389, 395–97.  In doing so, the Supreme Court "held that courts must 'adjust their remedies so as to grant the necessary relief' when 'federally protected rights have been invaded.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting

*Bivens*, 403 U.S. at 392).  Consistent with its holding in *Bivens*, the Supreme Court later found

implied rights of action and granted *Bivens* remedies in two additional contexts:  one where a

plaintiff alleged gender discrimination in violation of the Fifth Amendment's Due Process

Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and the other where a plaintiff complained of

deliberate indifference to medical needs in violation of the Eighth Amendment, *Carlson v.*

*Green*, 446 U.S. 14 (1980).  The Supreme Court has not explicitly extended *Bivens* to other

contexts in the ensuing forty years.  Indeed, in *Ziglar v. Abbasi*, the Supreme Court made plain

that *Bivens* would not operate as the "substantial equivalent of 42 U.S.C. § 1983" to permit

recovery in any new context and new category of defendant.  137 S. Ct. at 1855 (internal

quotation marks omitted).  Instead, the Supreme Court noted a change in its approach to

recognizing implied causes of action, now clearly disfavoring extending *Bivens* to "new

context[s]."  *Id*. at 1864.

When determining whether *Bivens* is being extended into such a new context, the

Supreme Court has indicated that, while not exhaustive, factors that might be instructive include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality
> or specificity of the official action; the extent of judicial guidance as to how an
> officer should respond to the problem or emergency to be confronted; the statutory
> or other legal mandate under which the officer was operating; the risk of disruptive
> intrusion by the Judiciary into the functioning of other branches; or the presence of
> potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860.

### A.  Plaintiff's Deliberate Indifference to His Serious Medical Needs Claims

#### 1.  Availability of a Remedy Under *Bivens*

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs

arising out of the July 7 attack and the February 2019 blackout at MDC Brooklyn (collectively,

the "deliberate medical indifference claims").  (Pl.'s Mem. at 12–21.)  In response, Defendants

7

argue that, by nature of Plaintiff's pre-trial status and other factual distinctions, recognizing such a claim would extend *Bivens* to a new context.  (Defs.' Mem. at 7.)  The Court disagrees with Defendants.

In *Carlson v. Greene*, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment gave an inmate a damages remedy for failure to provide adequate medical treatment.  *See* 446 U.S. at 17–18.  There, the inmate had a known chronic asthmatic condition, but, against the advice of doctors, the plaintiff was nonetheless held in a corrections center with known inadequate medical facilities.  *Id.* at 16 n.1.  And, officials

> failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.

*Id*.  Ultimately, the alleged failure to provide medical treatment resulted in the inmate's death.  *Id*.

Similarly, here, as to Plaintiff's deliberate indifference to medical issues claims, Plaintiff alleges repeated concerns and complaints related to injuries resulting from ongoing sexual assaults and at least three specific instances of reporting to officers who did not immediately provide medical care.  (Am. Compl. ¶¶ 27–33, 37–40.)  Plaintiff further alleges reports to specific officers that he was experiencing numbness to his left side and vomiting blood.  (*Id.* ¶ 45.)  Again, the amended complaint contains allegations that Plaintiff reported these medical issues, but the officers failed to act.  (*Id.*)  Thereafter, Plaintiff alleges he experienced severe pain, fractured ribs, a hole in his stomach, and a pinched nerve.  (*Id.* ¶ 46).  In other words, at base, Plaintiff in the instant action, like the respondent in *Carlson*, alleges "federal jailers[] fail[ed] to provide adequate medical treatment[.]"  *Gonzalez v. Hasty*, 755 F. App'x 67, 69 (2d Cir. 2018).

Nonetheless, Defendants maintain that, although the Supreme Court has previously

extended *Bivens* to an Eighth Amendment deliberate medical indifference claim in *Carlson,*

Plaintiff's status as a pretrial detainee requires his claims be considered under the Fifth

Amendment.  (Defs.' Mem. at 7–8.)  Therefore, as Defendants' argument goes, Plaintiff's claims

arise under a new *Bivens* context.  (*Id*.)  To be sure, the Supreme Court has not explicitly

recognized a *Bivens* remedy for deliberate indifference to serious medical needs under the Fifth

Amendment.  However, contrary to Defendants' contention, that Plaintiff's claims arise under a

different constitutional provision is not necessarily dispositive as to whether Plaintiff's claims

implicate a new *Bivens* context.

In *Abbasi*, the Supreme Court considered a Fifth Amendment due process claim, brought

against a warden by several pretrial detainees under *Bivens* for "deliberate indifference to

prisoner abuse."  137 S. Ct. at 1864.  In determining whether the claim arose under a new *Bivens*

context, the Court recognized the parallels to *Carlson,* where "the Court did allow a *Bivens* claim

for prisoner mistreatment—specifically, for failure to provide medical care."  *Id*.  Despite these

parallels, the Supreme Court concluded that plaintiffs sought to extend *Bivens* in a new context.

*Id.*  In reaching this conclusion, the Supreme Court noted first that there was a difference in the

constitutional right at issue.  *Id.*  Like here, the claim was predicated on the Fifth Amendment,

while *Carlson* was predicated on the Eighth Amendment.  *Id.*  At least equally important to the

Court's calculus was that the judicial guidance with regard to the plaintiffs' pretrial abuse claims

at issue was less developed than the legal claim at issue in *Carlson*.  In particular, the Supreme

Court raised the concern that although "the Court has long made clear the standard for claims

alleging failure to provide medical treatment to a prisoner . . .[t]he standard for a claim alleging

that a warden allowed guards to abuse pre-trial detainees is less clear under the Court's precedents." *Id*. at 1864–65.  That concern is not present here.

In this case, Plaintiff does not bring a pre-trial abuse claim.  Rather, Plaintiff seeks to hold federal officials liable for damages he sustained as a result of their indifference to his medical claims as a pretrial detainee.  If the claims proceed, in assessing its sufficiency, the Court would employ the same analysis that it would have had Plaintiff's claims arose under the Eighth Amendment.  Indeed, the Second Circuit has noted that "[w]e have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment . . . [w]e see no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d. Cir. 2000).

In deciding a Fifth Amendment medical indifference claim, the Court would ask whether Plaintiff pleaded a sufficiently serious medical need and that the official acted with a culpable state of mind.  *Compare Cannenier v. Skipper-Scott*, 18-cv-2383, 2019 WL 764795, at *4 (S.D.N.Y. Feb. 20, 2019) (considering a deliberate indifference to serious medical need claim under the Eighth Amendment), *with Laurent v. Borecky*, No. 17-cv-3300, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018) (considering a deliberate indifference claim brought under the Fifth Amendment and finding that while "this case . . . presents a different constitutional right at issue . . . it bears an extremely strong resemblance to [one of] the three *Bivens* claims the [Supreme] Court has approved in the past[]") (alternations in original) (internal quotation marks omitted).  In other words, there is clear judicial guidance on the "standard[s] for alleging failure to provide medical treatment to a prisoner." *Laurent*, 2018 WL 2973386 at *5.  As such, Plaintiff's *Bivens* claims for deliberate indifference to serious medical needs under the Fifth Amendment arise in

the same context as the Eighth Amendment claim recognized in *Carlson*. In so finding, the

Court joins several other district courts within this circuit to find the same. *See, e.g.*, *id*.;

*Geritano v. AUSA Office for E.D.N.Y.*, No. 20-cv-0781, 2020 WL 2192559, at *4 (S.D.N.Y. May

5, 2020) ("Courts in this district have held that a federal pretrial detainee may bring a medical

claim under the Fifth Amendment because such a claim is the same context as an Eighth

Amendment claim already recognized in *Carlson*."); *Sisk v. MCC, et al.*, No. 20-CV-10293,

2021 WL 412487, at *3 (S.D.N.Y. Feb. 3, 2021) ("Federal pretrial detainees may bring a Fifth

Amendment claim for failure to provide medical treatment as a *Bivens* action because such a

claim bears a strong resemblance to the claim in *Carlson*"); *Martinez v. D'Agata*, No. 16-cv-44,

2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) ("Plaintiff was a pretrial detainee at the time

of his arrest . . . . deliberate indifference to medical needs claims brought against federal actors

under *Bivens* are analyzed under the Fifth Amendment's Due Process Clause."); *Morgan v.

Shivers*, No. 14-cv-7921, 2018 WL 618451, at *7 n.4 (S.D.N.Y. Jan. 29, 2018) ("The Court notes

that, even in light of the proscription against creating new *Bivens* remedies, it would be

counterintuitive if a convicted prisoner could remedy a federal officer's failure to provide

medical care amounting to punishment, but a pre-trial detainee—who, unlike convicted

prisoners, cannot be punished at all, could not.") (internal quotation marks omitted).

     Certainly, the Court is mindful of the Supreme Court's recent decision in *Egbert v. Boule,*

which has been interpreted to significantly constrict the pathway for redress under *Bivens*. 142

S. Ct. 1793, 1818 (2022). Indeed, post-*Egbert*, at least two district courts have interpreted the

current scope of *Bivens* to preclude relief for pre-trial detainees alleging deliberate indifference

to their medical needs. *See Choice v. Michalak*, No. 21-CV-0060, 2022 WL 4079577, at *4

(N.D. Ill. Sept. 6, 2022) (holding that because the plaintiff's claim arose under the Fifth

Amendment instead of the Eighth Amendment, "it implicate[d] a different constitutional right," and therefore was meaningfully different from *Carlson*); *see also Stennis v. Armstrong,* No. 18 CV 7846, 2023 WL 1319561, at *6-7 (N.D. Ill. Jan. 31, 2023) (reasoning that plaintiff's status as a pretrial detainee claiming a right to adequate medical care under the Fifth Amendment arises under a new context).  Nonetheless, this Court cannot draw the same conclusion.

Imagine twin brothers, Alex and Terence, are each charged with bank robbery and held in the same cell at a federal facility.  Alex has already pleaded guilty, was sentenced, and is awaiting placement at a permanent facility.  Terence denied any wrongdoing and remained held as a pre-trial detainee.  Both Alex and Terence were diagnosed as chronic asthmatics.  In facts strikingly similar to *Carlson*, prison officials were aware that the two brothers suffered from a chronic asthmatic condition, as the two recently returned from a week-long hospital stay.  On the same day, both Alex and Terence each suffered from a severe asthmatic attack.  Prison officials declined to provide medical attention for nearly six hours.  Once medical attention was provided, prison officials administered contra-indicated drugs that exacerbated each brother's medical condition.  Despite the advice of prison doctors, the two brothers were not transferred to a hospital for over twelve hours, where they were subsequently pronounced dead.

As Defendants would have it, only Alex, the brother who pleaded guilty, would have the ability to seek relief based on a claim for indifference to his medical needs.  Terence, on the other hand, would be denied any such recourse.  Yet, the only difference between the two brothers lies in their status — one is a convicted felon who may bring an Eighth Amendment claim and the other is a pre-trial detainee who seeks to prove his innocence, and therefore, must pursue any claim under the Fifth Amendment.  Under these circumstances, the Court finds that this distinction is neither meaningful nor relevant.  In drawing this conclusion, this Court is

mindful of Justice Sotomayor's sage counsel in her dissent to *Egbert*.  There she writes, "although [the *Egbert*] opinion will make it harder for plaintiffs to bring a successful *Bivens* claim . . . the lower courts should not read it to render *Bivens* a dead letter."  *Egbert*, 142 S. Ct. at 1823 (Sotomayor, J., concurring in part and dissenting in part).  I have not.

### 2.  Existence of Actionable Claims

Having determined that Plaintiff can bring a Fifth Amendment claim for deliberate indifference to his serious medical needs under *Bivens*, the Court must consider whether Plaintiff has sufficiently alleged a constitutional violation.

As a threshold matter, personal involvement of a defendant is a prerequisite to any *Bivens* claim.  *See Ashcroft*, 556 U.S. at 676; *Ganek v. Leibowitz*, 874 F.3d 73, 92 (2d Cir. 2017).  Specifically, "[b]ecause the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."  *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).  Indeed,

> [t]he personal involvement of a supervisory defendant may be shown by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.

*Id*. at 496–97.

Defendants argue that Plaintiff does not allege Defendants were aware of his medical complaints or that any Defendants were personally involved in any constitutional violation arising from his deliberate medical indifference claims.  (Defs.' Mem. at 19.)  The Court agrees as to Defendants Quay, Garcia, White, Gonzalez, and Maury because the amended complaint contains only conclusory allegations as to their personal involvement.

As to former Warden Quay, Associate Warden Garcia,[6] and Cpt. White, the amended complaint only generally alleges that Plaintiff informed them of "what was happening to him"—referring to the alleged sexual assault and extortion—but "no remedial action was taken." (Am. Compl. ¶ 32.)  The amended complaint also alleges that Quay, White, and Garcia were amongst a group of Defendants to whom Plaintiff sent "at least eighty-five [] emails . . . wherein he described" the details alleged in the amended complaint. (*Id.* ¶ 49.)  Similarly, the amended complaint alleges Plaintiff informed Defendants Gonzalez, White, and Maury that he was being extorted and had been sexually abused several times. (*Id.* ¶¶ 48, 49.)  However, Plaintiff does not allege that any of these communications related to Plaintiff's deliberate medical indifference claims.

The same conclusion cannot be reached as to Defendants Lt. Pope, Lt. Metzger, and C.O. Calixte.  As to the July 7 attack, Plaintiff alleges sufficient personal involvement of Defendants Lt. Pope and Lt. Metzger.  After being taken to the SIS location, Plaintiff alleges he informed Lt. Pope of the attack and made him aware of his need for medical attention. (Am. Compl. ¶ 38.)  Lt. Pope laughed in response without taking further action. (*Id.*)  Similarly, with respect to Lt. Metzger, Plaintiff alleges Lt. Metzger was in the vicinity at the time Plaintiff told Lt. Pope, heard about the attack, and told Plaintiff he should learn to defend himself. (*Id.* ¶¶ 39–40.)  Likewise, as to the allegations of deliberate indifference to Plaintiff's medical needs following the 2019 blackout at MDC Brooklyn, Plaintiff alleges he reported to C.O. Calixte and Lt. Metzger that he was experiencing numbness to his left side and that he had vomited blood. (*Id.* ¶ 45.)  These Defendants remained indifferent to his pleas. (*Id.*)  According to the amended complaint, Defendant Metzger simply told Plaintiff that he was "sick in the head." (*Id.* ¶ 45.)  Accordingly,

---

[6] The amended complaint alleges Garcia was responsible for correctional service, food service, and health services. (Am. Compl. ¶ 13.)

Plaintiff has sufficiently alleged personal involvement as to Lt. Pope, Lt. Metzger, and C.O. Calixte.

Beyond the personal involvement of each defendant, "[t]o establish an unconstitutional denial of medical care, a prisoner must prove deliberate indifference to his serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and modification omitted). Successful assertion of a claim for deliberate indifference requires a plaintiff to allege facts sufficient to satisfy both the objective and subjective prongs of the standard. *Id.* The objective prong requires "the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (internal quotation marks omitted). "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). Indeed, within the Second Circuit, factors considered include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Laurent*, 2018 WL 2973386, at *3 (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)). A plaintiff must allege deliberate indifference, or that the "charged official . . . act[ed] with a sufficiently culpable state of mind." *Hathaway*, 99 F.3d at 553. The required state of mind is:

> [T]he equivalent of criminal recklessness; namely, when the prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* Notably here, the "subjective prong" is defined objectively, and courts must determine whether the official "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Morgan*, 2018 WL

618451, at *7 ("[T]he second requirement—the *mens rea* prong of deliberate indifference to serious medical needs claims—must be analyzed objectively: courts must determine whether the official knew, or should have known that his or her conduct posed an excessive risk to health or safety.") (internal quotation marks omitted).

Defendants urge dismissal on the grounds that the deprivation Plaintiff alleges is not sufficiently serious as a matter of law. (Defs.' Mem. at 20–21.) Specifically, Defendants maintain Plaintiff failed to plead sufficient factual allegations to support a claim that these Defendants disregarded a serious medical need. (*Id.*) The Court disagrees. Plaintiff alleges an attack whereby he was anally sodomized with a broomstick. (Am. Compl. ¶ 36.) He further alleges he cried out for help, complaining of "severe pain" in his anus, mouth, and ribs following the attack. (*Id.* ¶¶ 36, 38.) Likewise, following the 2019 MDC Blackout, Plaintiff alleges he experienced numbness in his left side and was vomiting blood. (*Id.* ¶ 45.) Upon being taken to the hospital, doctors diagnosed him with a hole in his stomach and a pinched nerve. (*Id.* ¶ 46.) These allegations sufficiently establish a serious medical need, for which the denial of treatment "could result in further significant injury or the unnecessary and wanton infliction of pain." *Abreu v. Lipka*, 778 F. App'x 28, 31–32 (2d Cir. 2019) ("The medical need is considered 'serious' where the denial of treatment 'could result in further significant injury or the unnecessary and wanton infliction of pain.'") (quoting *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

Next, Defendants argue that Plaintiff has not sufficiently pleaded a deliberate indifference claim because "medical care was afforded [to him] in a matter of hours on each occasion." (Defs.' Mem. at 22.) Not so. With respect to the July 7 attack, Plaintiff alleges Defendants did not offer him "immediate" medical care and thus delayed his treatment. (Am. Compl. ¶ 40.)

16

And, with respect to Plaintiff's medical condition during the 2019 MDC Blackout, Plaintiff alleges he was denied medical treatment for several days. (Am. Compl. ¶¶ 44–45.) These allegations are sufficient. *See, e.g.*, *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (delay of only 28 hours does not necessitate dismissal); *Moco v. Janik*, No. 17-cv-398, 2019 WL 3751628, at *3 (W.D.N.Y. Aug. 8, 2019) ("Although he may have received care eventually, Plaintiff has sufficiently alleged that Defendants denied or delayed treatment for a serious medical need.").

Accordingly, Plaintiff has sufficiently alleged a claim for deliberate indifference to his serious medical needs as to Defendants Lt. Metzger, Lt. Pope, and C.O. Calixte.

## B. Plaintiff's Deliberate Indifference to His Safety Claim

### 1. Availability of a Remedy Under *Bivens*

In addition to Plaintiff's claims for deliberate indifference to his serious medical needs, Plaintiff also brings a claim for failure to protect or deliberate indifference to his safety. (Pl.'s Mem. at 21–22.) Defendants challenge this claim on the basis that it arises in a new *Bivens* context not recognized by the Supreme Court. (Defs.' Reply at 11–12, ECF No. 69.) The Court agrees. Indeed, Plaintiff does not dispute that the claim arises in a new context, legally and factually distinct from claims previously recognized under *Bivens*. (Pl.'s Mem. 22–23). Accordingly, the Court must consider whether special factors counsel hesitation against allowing Plaintiff's *Bivens* claim to proceed.[7] Defendants maintain that they do. (Defs.' Mem. at 12–13.) The Court agrees.

---

[7] In support of his argument, Plaintiff cites the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994). In *Farmer*, the complaint alleged prison officials placed petitioner in the prison's "general population despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a transsexual who 'projects feminine characteristics,' would be particularly vulnerable to sexual attack by some USP–Terre Haute inmates." 511 U.S. at 831. There, the Supreme Court acknowledged "prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency."

## 2.  Special Factors Counseling Hesitation[8]

Where, as here, a court determines a claim arises under a new *Bivens* context, the court must then consider "whether there are any special factors that counsel hesitation about granting the extension."  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (internal quotation marks omitted).  The crux of this inquiry being "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi*, 137 S. Ct. at 1858.  Notably, in *Abbasi*, the Supreme Court acknowledged the phrase "special factors counselling hesitation" had not previously been defined and identified several factors for the court to consider.  *Id.* at 1857; *see also Crespo v. Hurwitz*, No. 17-cv-6329, 2020 WL 7021658, at *5 (E.D.N.Y. Nov. 30, 2020) (noting special factors might include "an alternative remedial scheme, the manner in which [] Congress has structured its regulatory authority, the burden of a damages remedy on the Government and individual employees, or any other unforeseeable factor that would counsel restraint").  Of particular relevance here, courts must consider whether "there is an alternative remedial structure present . . . [as] that alone may limit the power of the Judiciary to infer a new *Bivens* cause of

---

*Id.* at 833 (internal quotation and alteration omitted).  And while the Supreme Court did not explicitly recognize this as an extension of the *Bivens* remedy, it did not reject the petitioner's argument on *Bivens* grounds, and at least one court in this district have understood this to mean "conditions of confinement actions under the Eighth Amendment includes both medical care and safety, [in other words,] they are not distinct claims."  *Walker v. Schult*, 463 F. Supp. 3d 323, 331 (N.D.N.Y. 2020).  While the Court does, to some extent, find this argument persuasive, it is contrary to the Supreme Court's explicit guidance in *Abbasi*, which came after the *Farmer* decision.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

[8] The Court takes into consideration the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which supports this Court's finding that special factors counsel hesitation.  In its supplemental briefing in opposition to the motion to dismiss, Plaintiff argues that the holding in *Egbert* reaffirms the two-step inquiry, requiring a court to determine, first, whether a claim arises in a new context, and second, whether there are any special factors counseling hesitation.  (Pl. Supp. Opp. Mem. at 1, ECF No. 85.)  Defendants argue that while the *Egbert* Court did not explicitly replace the two-step inquiry, the Supreme Court made clear that the inquiry "often boils down to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  (Defs.' Supp. Mem. at 4, ECF No. 86.)  Nonetheless, Defendants apply the two-step analysis, arguing that the case should be dismissed because there are special factors counseling hesitation.  The Court agrees.  Applying the two-step analysis in this case does not alter the Court's finding.

action." *Abbasi*, 137 S. Ct. at 1858. Importantly, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id*. Here, Defendants argue that alternative processes exist to provide redress for Plaintiff's claims. (Defs.' Mem. at 12.) Namely, Defendants point to the Federal Torts Claim Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*., equitable remedies, such as a petition for habeas relief or an injunction, New York state law claims, and the BOP's Administrative Remedy Program. (Defs.' Mem. at 12–15.)

Defendants principally rely on the FTCA in arguing that Plaintiff has other avenues of redress for his claims. (Defs.' Mem. at 13–14.) It is true that Plaintiff has an available remedy under the FTCA, which provides a cause of action against the United States for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). And, Plaintiff has at least suggested to this Court that he has a separate pending action under the FTCA. (Pl.'s Mem. at 3 ("These lawsuits are pending, as is the evaluation of Plaintiff's potential [FTCA] claim against the United States.").) The Court, however, is not altogether persuaded that the FTCA, standing alone, provides sufficient alternative relief in light of the Supreme Court's prior guidance in *Carlson*. In *Carlson*, the Supreme Court considered whether Congress's enactment of the FTCA preempted a *Bivens* remedy under the Eighth Amendment by "creat[ing] an equally effective remedy for constitutional violations." 446 U.S. at 19. Ultimately, the Supreme Court determined it was "crystal clear" Congress viewed the FTCA as "parallel, complementary causes of action," and identified several significant differences between claims brought under the FTCA and *Bivens*, including that any remedy under *Bivens* is recoverable against individuals. *Id*. at 20. The

Supreme Court determined the "FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy." *Id*. at 23.

This Court is mindful that at least one circuit court and sister courts in this district have concluded "that *Carlson*'s analysis of adequate alternative remedies cannot survive *Abbasi* and dismissed *Bivens* claims because the FTCA provides an adequate alternative remedy." *Scott v. Quay*, No. 19-cv-1075, 2020 WL 8611292, at *8 (E.D.N.Y. Nov. 16, 2020) (collecting cases). However, neither the Supreme Court nor the Second Circuit has explicitly "decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes the *Bivens* remedy." *Id*. And, absent clear guidance, this Court joins others unwilling to determine that the FTCA alone is a sufficient alternate remedy. *See Powell v. United States*, No. 19-cv-11351, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020) ("The Supreme Court has not been bashful in signaling its skepticism of the *Bivens* remedy—if the Court intended to overrule *Carlson*, I am quite sure it would simply do so."); *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 711 (S.D.N.Y. 2020) ("The Supreme Court's prior rulings in [*Carlson*] and [*Robbins*], remain good law . . . [t]he Court will follow that precedent.").

That said, Defendants argue, and Plaintiff does not contest, several other alternative remedies exist, including under New York state laws, BOP regulations, and the federal habeas statute. The Court agrees. Indeed, the Supreme Court has recognized these and similar remedies to be adequate alternatives to a claim under *Bivens*. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program[.]"); *Abbasi*, 137 S. Ct. at 1863 ("Indeed,

the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages.  A successful habeas petition would have required officials to place respondents in less-restrictive conditions immediately; yet this damages suit remains unresolved some 15 years later.").  Taken together, the Court believes there exists special factors counseling hesitation and, accordingly, Plaintiff's deliberate indifference to safety claim is dismissed.

### III.    Plaintiff's Conditions of Confinement Allegations

Defendants maintain that to the extent Plaintiff's amended complaint challenges the conditions of confinement during the blackout at MDC, such a claim would arise under a new *Bivens* context.  (Defs.' Mem at 11–12.)  In response, Plaintiff represents that he has actions related to the blackout that remain pending, including an FTCA claim against the United States and his participation in class action lawsuits against the MDC and Defendant Quay.  (Pl.'s Mem. at 3.)  Plaintiff, however, does not substantively respond to Defendants' legal argument.  Because Plaintiff's opposition is devoid of any response to Defendants' arguments, the Court need not address Defendants' arguments on the merits as Plaintiff's claims are deemed abandoned.  *See, e.g.*, *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (internal citations and quotation marks omitted) ("When a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned . . . [e]specially in the case of a counseled party where a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

### IV.    Qualified Immunity

In a footnote, Defendants argue they are entitled to dismissal because their actions were protected under the doctrine of qualified immunity.  Specifically, as to Plaintiff's "medical

claims," Defendants maintain that it was objectively reasonable for Defendants to believe that their actions, taken in response to a developing emergent situation, did not violate any clearly established constitutional rights.[9]  (Defs.' Mem. at 25 n.8.)  The Court disagrees.

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)).  As to medical indifference claims specifically, "to establish their qualified immunity defense, the defendants must show that it was objectively reasonable, for them to believe that they had not acted with the requisite deliberate indifference."  *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (internal citations and quotation omitted).  On the face of these pleadings, the facts of which are accepted as true, the Court is unwilling to draw such a conclusion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part.  Specifically, Defendants' motion to dismiss Plaintiff's deliberate indifference as to his safety claim is GRANTED.  Defendants' motion to dismiss Plaintiff's deliberate indifference as to his medical needs claims against Defendants Quay,

---

[9] Defendants make a similar argument as to the Plaintiff's "power-outage-related" complaints, separate from Plaintiff's medical complaints.  Having deemed any such claims as abandoned, the Court need not rule on Defendants' entitlement to qualified immunity.

Garcia, White, Gonzalez, and Maury is GRANTED.  Defendants' motion to dismiss Plaintiff's deliberate indifference as to his medical needs claims against Defendants Pope, Metzger, and Calixte is DENIED.

                                                              SO ORDERED.

Dated: Brooklyn, New York                           /s/ LDH
       September 1, 2023                             LASHANN DEARCY HALL
                                                    United States District Judge