UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RUSLAN MIRVIS,

                                Plaintiff,

        v.

HERMAN QUAY, Warden; ELEAZAR GARCIA, Associate Warden; JONATHAN WHITE, Captain; "JOHN" POE, LIEUTENANT; "JOHN" METZGER, LIEUTENANT; "JOHN" CALIXTE, CORRECTION OFFICER; "JOHN DOE" #1-3, Correction Officers; "G." GONZALEZ, CORRECTION OFFICER; "JANE DOE," Correction Officer; AND Counselor MAURY "DOE",

                                Defendants.

---

**MEMORANDUM AND ORDER**

19-CV-2573 (LDH) (VMS)

LaSHANN DeARCY HALL, United States District Judge:

    Ruslan Mirvis ("Plaintiff") brings the instant action against former Warden Herman Quay, Associate Warden ("A.W.") Eleazar Garcia, Captain Jonathan White, former Lieutenant Thomas Poe, Lieutenant Veronica Metzger, Senior Officer Specialist Pierre Calixte, Correctional Counselor Lawrence Murray, and former Correctional Officer George Gonzalez, asserting *Bivens* claims for deliberate indifference to his safety and deliberate indifference to his medical needs in violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. All claims against Defendants Quay, Garcia, Gonzalez, White, and Murray, as well as Plaintiff's claim for deliberate indifference to his safety, were dismissed on March 31, 2021.[1] Defendants Calixte, Metzger, and Pope (together, "Defendants") move pursuant to Rule

---

[1] The Court entered the Memorandum and Order dismissing these defendants and claims on September 1, 2023. (Memorandum and Order ("M&O"), *Mirvis v. Quay et al* ("*Mirvis*"), 19-cv-2573 (E.D.N.Y. Sept. 1, 2023), ECF No. 95.)

1

56 of the Federal Rules of Civil Procedure to dismiss the remaining Fifth Amendment claim for deliberate indifference to serious medical need claims against them.

**UNDISPUTED FACTS[2]**

Plaintiff was a pretrial detainee at the Metropolitan Detention Center ("MDC") in Brooklyn, NY from April 21, 2017, to July 9, 2019. (*See* Consol. Stmt. Undisputed Material Facts ("Consol. 56.1 Stmt.") ¶ 1, ECF No. 104-1.) Plaintiff's claims arise out of events that occurred in July 2017 and in February 2019.

### I. July 2017 Events

On July 7, 2017, at 11:55 p.m., Plaintiff activated a duress alarm and told an officer that he did not feel safe in his unit because he was being extorted. (*See id.* ¶ 2; Decl. of Uri Nazryan ("Nazryan Decl."), Ex. 9 ("BOP TruScope Records") at 1, ECF 103-11.) On July 8, 2017, at 8:51 a.m., Plaintiff was sent to speak with a lieutenant, and it was reported that "[a]ll appear[ed] normal with [Plaintiff]." (*See* Consol. 56.1 Stmt. ¶ 2; Nazryan Decl., BOP TruScope Records at 2.) On July 12, 2017, at 8:11 a.m., Plaintiff sent an email to medical staff via Trulincs, stating that he was "having chest pain and rib pain." (*See* Consol. 56.1 Stmt. ¶ 42; Nazryan Decl., Ex. 4 ("July 12 Trulincs Email") at 1, ECF No. 103-6.) At 9:06 a.m. that same day, Plaintiff spoke to another officer and reported that "he [was] fearful for his life, he ha[d] been threaten[ed] multiple times and . . . he ha[d] black and blue bruises." (*See* Consol. 56.1 Stmt. ¶ 2; Nazryan Decl., BOP TruScope Records at 3.)

Later that day, around 2:00 p.m., Plaintiff requested to be placed in protective custody, stating that he had been jumped and assaulted. (*See* Consol. 56.1 Stmt. ¶ 2; Decl. of Kimberly

---

[2] The following facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

A. Francis ("Francis Decl."), Ex. C ("Inmate Investigative Report") at 2, ECF No. 102-6.) In response to his request for protective custody, Plaintiff spoke to Defendant Pope, with Defendant Metzger present, and told them about his pain. (*See* Consol. 56.1 Stmt. ¶ 3, 46.) This was Plaintiff's first time interacting with Defendants Pope and Metzger. (*Id*. ¶ 7, 46.) Plaintiff had photographs taken of the bruises and redness on his chest and hands and had no other visible injuries. (*Id*. ¶¶ 4-5.) After spending 20 minutes with Defendants Pope and Metzger, Plaintiff was taken to see medical staff. (*Id*. ¶¶ 6, 8.)

At approximately 2:32 p.m., Plaintiff was examined by a nurse at MDC, who reported that Plaintiff "[r]eport[ed] pain during inspiration and expiration to [his] left rib," had "[n]o respiratory distress," had "[t]wo older bruises [on his] left upper arm," and that his "[l]eft rib area [wa]s tender to palpation." (*Id*. ¶ 9; Francis Decl., Ex. D ("July 12 Record of Clinical Encounter") at 2, ECF No. 102-7.) The nurse also reported that Plaintiff's skin was intact, "[n]o other marks[,] abrasions or injuries," and "[n]o impairments" were observed, and Plaintiff stated that his neck hurt because he was grabbed by the throat, but he "denie[d] difficulty swallowing or chewing." (Francis Decl., July 12 Record of Clinical Encounter at 2.) The nurse informed Plaintiff that x-rays would be ordered and prescribed him Motrin for his pain. (*Id*.) The nurse further informed Plaintiff to "contact medical with any questions or concerns," and Plaintiff "verbalized understanding and was agreeable with [the] plan of care." (*Id*.) The parties do not dispute that Plaintiff received the pain medication and the x-ray. (*See* Consol. 56.1 Stmt. ¶¶ 10-12.) However, the parties dispute whether the pain medication was appropriate relative to the amount of pain that Plaintiff experienced and whether the x-rays were sufficiently timely. (*See id.*) Plaintiff was placed in the Segregated Housing Unit ("SHU") from July 12, 2017, to August

3

9, 2017.  (*Id.* ¶ 48.)  Plaintiff asserts that he experienced extreme pain in his mouth[3] and ribs during that time.  (*Id.* ¶ 49.)  Plaintiff's ribs eventually healed.  (*Id.* ¶ 13.)

## II. February 2019 Events

On February 4, 2019, at 10:29 a.m., Plaintiff sent an email to medical staff via Trulincs stating that his stomach was killing him, he was throwing up blood, and his left side was numb. (*Id.* ¶ 50; Nazryan Decl., Ex. 6 ("Feb. 4 Trulincs Email") at 1, ECF No. 103-8.)  There is no record that Plaintiff was seen by medical staff that day, beyond the administration of his regular medication at 8:19 p.m.  (Consol. 56.1 Stmt. ¶ 51; Supp. Decl. of Kimberly A. Francis ("Supp. Francis Decl."), Ex. N ("Medication Administration Record") at 1, ECF No. 104-5.)

On February 5, 2019, Plaintiff spoke to Defendant Calixte about his pain, stating that he could not eat and was vomiting blood.  (Consol. 56.1 Stmt. ¶ 14.)  The parties dispute whether Plaintiff also told Defendant Calixte that he "couldn't stand up, was curled up, and couldn't walk."  (*Id.*)  This was the first time that Plaintiff interacted with Defendant Calixte, and Defendant Calixte did not know Plaintiff prior to this interaction.  (*Id.* ¶ 17.)  Defendant Calixte informed Plaintiff that he would call medical staff.  (*Id.* ¶ 15.)  Defendant Calixte radioed down to medical staff, but was placed on standby and did not have an opportunity to speak with them at that time.  (*Id.* ¶ 56.)  Sometime later that day, Defendant Metzger came to Plaintiff's unit and spoke to Defendant Calixte and Plaintiff about Plaintiff's medical issue.  (*Id.* ¶ 18.)  The parties dispute whether Defendant Metzger directed Defendant Calixte to call medical staff a second time.  (*Id.*)  Nonetheless, Defendant Calixte told Plaintiff that he called medical staff again.  (*Id.* ¶ 19.)  Defendant Calixte did not activate his body alarm in response to Plaintiff's medical

---

[3] Pursuant to Plaintiff's deposition testimony, Plaintiff was also experiencing pain from a ruptured root canal, unrelated to the injuries reported to Defendants Pope and Metzger. (*See* Consol. 56.1 Stmt. ¶ 49; Nazryan Decl., Ex. 1 ("Mirvis Dep. Tr.") at 45:15-48:17, ECF No. 103-3.) Medical records reflect that Plaintiff refused a surgical extraction of the impacted tooth. (*See id.*)

4

request, which he would have done if an inmate had fainted or was unconscious. (*Id*. ¶ 58.) The parties dispute whether Plaintiff could have "appeared fine" to Defendant Calixte at this time. (*Id*. ¶ 20.) Moreover, the parties dispute whether Defendant Calixte spoke to medical staff on February 5, 2019. (*Id*. ¶¶ 15-16, 56.) Defendant Calixte testified that he would typically log an inmate's request for medical attention, any subsequent conversation with medical staff about such request, and any responsive visit by medical staff in a physical or electronic logbook. (*Id*. ¶¶ 61-62, 64, 66-68.) However, the electronic logbook for February 5, 2019 does not reflect any request for medical attention made by Plaintiff, any call to medical staff regarding his request, or any visit by medical staff. (*Id*. ¶¶ 69-70.)

At 1:38 p.m., Plaintiff sent an email to the warden explaining that Defendant Metzger had come to his unit around 12:00 or 12:30 p.m., to check in with Defendant Calixte, and that he informed her of his need for medical attention. (*Id*. ¶ 52; Nazryan Decl., Ex. 7 ("Feb. 5 Trulincs Email") at 1, ECF No. 103-9.) In the email, Plaintiff stated that he had his gallbladder removed the month before and when he told Defendant Metzger about his need for medical attention, she mocked him by saying he "need[ed] medical attention for [his] head." (Nazryan Decl., Feb. 5 Trulincs Email at 1.) Plaintiff further complained about Defendant Metzger's prior conduct during the July 2017 incident and stated that he was receiving "inhumane treatment." (*Id*.) The parties dispute whether Defendant Metzger mocked or made any such comments to Plaintiff. (Consol. 56.1 Stmt. ¶ 54.)

The parties dispute whether medical staff visited Plaintiff on February 5, 2019, approximately four to five hours after Plaintiff first complained to Defendant Calixte and about half an hour to an hour after Plaintiff spoke to Defendant Metzger. (*Id*. ¶ 21.) Plaintiff testified that he was visited by medical staff approximately half an hour to an hour after his interaction

5

with Defendant Metzger. (*Id*.; Mirvis Dep. Tr. at 56:2-25.) However, Defendant Calixte testified that he did not recall seeing medical staff arrive, nor is there a record of Plaintiff being seen by medical staff on February 5, 2019. (Consol. 56.1 Stmt. ¶ 21.)

On February 6, 2019, at 1:25 p.m., Plaintiff sent an email to the associate warden, stating that he had been asking for help for three days, that he was in a lot of pain, and that he was being ignored and mocked by officers. (*Id*. ¶ 55; Nazryan Decl., Ex. 8 ("Feb. 6 Trulincs Email") at 1, ECF No. 103-10.) At approximately 2:40 p.m., Plaintiff was evaluated by a doctor in his housing unit. (Consol. 56.1 Stmt. ¶ 22; Francis Decl., Ex. F ("Feb. 6 Record of Clinical Encounter") at 1, ECF No. 102-9.) The doctor reported that: Plaintiff was "having crampy epigastric pain" that would start approximately 20 minutes after eating solid foods; Plaintiff reported having five or six vomiting episodes in the prior four days; Plaintiff "threw up a lot of blood (unwitnessed) with food" on the first day but later "threw up chunks of food with no blood"; Plaintiff reported a pain level of "20"; and Plaintiff experienced some numbness and weakness. (Francis Decl., Feb. 6 Record of Clinical Encounter at 1.) At approximately 3:42 p.m., the doctor recorded an administrative note requesting that Plaintiff be sent to the emergency room at Kingsbrook Jewish Medical Center ("KJMC"). (Consol. 56.1 Stmt. ¶ 23; Francis Decl., Exhibit G ("Feb. 6 Admin. Note") at 1, ECF No. 102-10.) At approximately 6:27 p.m., Plaintiff was transported to KJMC and was admitted the next day. (Consol. 56.1 Stmt. ¶¶ 23-24; Francis Decl., Ex. H ("KJMC Discharge Summary") at 1, ECF No. 102-11.)

Hospital staff at KJMC informed Plaintiff that he was experiencing stomach issues because his gallbladder had been removed and he had to get used to digesting fatty foods. (Consol. 56.1 Stmt. ¶ 25.) Plaintiff was also diagnosed with acute gastroenteritis and anxiety and then was discharged back to MDC. (*Id*. ¶ 26.) The doctors at KJMC recommended that Plaintiff

6

increase his fluid intake and prescribed him medication. (*Id.* ¶ 27.) On February 10, 2019, Plaintiff received a medical assessment by a nurse at MDC. (*Id.* ¶ 28; Francis Decl., Ex. J ("Feb. 10 Report of Clinical Encounter") at 1, ECF No. 102-13.) The nurse reported that there was "[n]o [s]ignificant [f]indings" and "[n]o [a]pparent [d]istress." (Francis Decl., Feb. 10 Report of Clinical Encounter at 1.) The parties dispute whether, at the time, MDC's clinical records fully reflected the severity of Plaintiff's symptoms and experience. (Consol. 56.1 Stmt. ¶ 28.)

The BOP maintains a system for recording grievances filed by inmates. (*Id.* ¶ 29.) Plaintiff filed several grievances regarding the July 2017 and February 2019 incidents. (*Id.* ¶¶ 30, 71.) However, the parties dispute the accuracy of the BOP records with respect to these grievances, the reasons for the denial of said grievances, and the timeliness of said grievances. (*Id.* ¶¶ 30-41, 71-72.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be

7

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis omitted) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Leone v. Owsley*, 810 F.3d 1149, 1153–54 (10th Cir. 2015) (collecting cases).

Once the movant meets their initial burden, the non-moving party may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in their favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

Finally, "[i]n considering motions for summary judgment, a court can consider only admissible evidence." *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 569 (E.D.N.Y. 2013), *aff'd in part, dismissed in part*, 594 F. App'x 723 (2d Cir. 2014) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)). "The rules governing the admissibility of evidence on a summary judgment motion are the same as those governing admissibility at trial, and the district court has broad discretion in choosing whether to admit evidence." *Id.*

## DISCUSSION

### I. Existence of a *Bivens* Claim

To assess whether a plaintiff sufficiently establishes a *Bivens* claim, courts must conduct a two-step inquiry into whether, as a threshold matter, a *Bivens* remedy is available to the plaintiff. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). *First*, the court must determine whether

8

the claim presents "a new *Bivens* context." *Id*. (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017)) (internal quotations omitted). That is, the court must evaluate whether the plaintiff's claim is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. at 137) (internal quotations and alterations omitted). *Second*, if the claim presents a new *Bivens* context, the court must then assess whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. at 137). A *Bivens* remedy is unavailable "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context.'" *Id*. (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

Defendants argue that Plaintiff's claim must be dismissed because it extends *Bivens* to a new context and special factors counsel hesitation in extending *Bivens* to this new context. (Defs.' Mem. in Supp. Mot. Summ. J. ("Defs.' Mem.") at 4-15, ECF No. 102-1.) The Court disagrees.

The Supreme Court has found an implied cause of action for damages against a federal officer in their individual capacities in three contexts: (1) a Fourth Amendment cause of action for unreasonable search and seizure, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971); (2) a Fifth Amendment cause of action for gender discrimination against a congressman, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (3) an Eighth Amendment cause of action for deliberate indifference to a prisoner's serious medical needs, *Carlson v. Green*, 446 U.S. 14 (1980). Plaintiff brings claims against Defendants for deliberate indifference to his serious medical needs in connection with the July 2017 and February 2019 events. (*See* Pl.'s Mem. in Opp'n Defs.' Mot. Summ J. ("Pl.'s Opp'n.") at 1, ECF No. 103.) Because

9

Plaintiff was a pre-trial detainee at the time that his claims arose, his claims must arise under the Fifth Amendment, rather than the Eighth Amendment. *See Mirvis v. Quay*, No. 19-CV-2573, 2023 WL 5671935, at *4-5 (E.D.N.Y. Sept. 1, 2023). However, as this Court determined in its prior decision granting in part and denying in part Defendants' motion to dismiss, Plaintiff's *Bivens* claims for deliberate indifference to serious medical needs do not extend to a new context simply by virtue of the fact that it arises under the Fifth Amendment. *See Mirvis*, 2023 WL 5671935 at *5.[4]

In any event, tackling the issue from a different front, Defendants now argue that Plaintiff's claim extends *Bivens* to a new context because the undisputed factual record demonstrates that the delay in Plaintiff's treatment did not result in serious harm and, thus, the severity of Plaintiff's medical need was markedly different from that at issue in *Carlson*. (Defs.' Mem at 7-9.) To support their argument, Defendants cite to two cases from this district—*Scott v. Quay* and *Mendoza v. Edge*. (*Id.* (first citing No. 19 Civ. 1075, 2020 WL 8611292, at *5-6 (E.D.N.Y. Nov. 16, 2020); and then 615 F. Supp. 3d 163, 172 n.2 (E.D.N.Y. 2022)). Neither support Defendants' argument. In *Scott v. Quay*, the court held that plaintiffs' Eighth Amendment claims arose in a new *Bivens* context where plaintiffs alleged that a partial power outage at MDC resulted in "unconstitutional conditions of confinement, including a lack of light, heat, hot meals, clean water, and hot water, prolonged detention in cells, plumbing disruptions, lack of access to e-mail, television, and social telephone calls and visits, curtailment of communication with counsel, and denial of, or indifference to, requests for medical attention and

---

[4] To be clear, the Court rejects Plaintiff's argument that the established law of the case precludes a finding that a *Bivens* remedy is unavailable here. (*See* Pl.'s Opp'n at 2-9.) As Defendants argued in their reply, the law of the case doctrine "would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013). Nonetheless, the Court concludes that the evidence here does not alter its conclusion that Plaintiff's claim does not impermissibly extend *Bivens* to a new context.

10

care." *Scott*, 2020 WL 8611292 at *1. There, the court reasoned that, although plaintiffs technically raised a deliberate indifference claim, the context differed from *Carlson* because "the degree to which officials must maintain the infrastructure of detention facilities, or to which they may be held to account for failing to provide a range of services during a time-limited emergency, is less clearly established." *Id*. at *5. The court in *Scott* added that "the exigencies of the power outage likely required prison officials to prioritize certain needs of the detainees in a way that would not have been required in *Carlson*; this difference will alter the deliberate indifference analysis." *Id*. at *6. Here, Plaintiff does not allege deliberate indifference to his medical needs caused by an overarching unconstitutional condition of confinement at MDC. Unlike the plaintiffs in *Scott*, Plaintiff alleges that specific officials were deliberately indifferent to his specific medical needs, just as the plaintiff's mother in *Carlson* alleged.

*Mendoza v. Edge* is also of little use to Defendants' argument. In fact, the court's holding in *Mendoza* only cuts against Defendants' argument. Defendants contend that the court in *Mendoza* held that, because the defendants' alleged deliberate indifference to the plaintiff's COVID-19 symptoms did not result in serious injury or harm, the plaintiff's allegations would extend *Bivens* into a new context. (Defs.' Mem. at 8.) To the contrary, the court in *Mendoza* held that the plaintiff's claim that the defendants were deliberately indifferent to his health was the only claim that did not extend *Bivens* into a new context. *Mendoza*, 615 F. Supp. 3d at 171 ("Unlike the plaintiff's allegations about the conditions of his incarceration, his claim that the defendants were deliberately indifferent to his health bears an 'extremely strong resemblance' to the Eighth Amendment deliberate indifference claim at issue in *Carlson*." (quoting *Laurent v. Borecky*, No. 17-CV-3300, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018)).[5] Instead, the

---

[5] The Court acknowledges the footnote in *Mendoza* stating that "[b]ecause the defendants' alleged deliberate indifference to the plaintiff's COVID-19 symptoms did not result in any serious injury or harm, the plaintiff's

11

court in *Mendoza* found that, because the plaintiff failed to allege that he suffered any lasting harm from the defendants' failure to treat his COVID-19 symptoms, he failed to satisfy the first prong of a deliberate indifference claim under the Eighth Amendment. *Id.* at 172.

In addition to the cases from this district, Defendants also direct the Court to cases in the Southern District of New York, where courts have held that a deliberate indifference claim that is less severe than the conduct at issue in *Carlson* extends *Bivens* to a new context. (Defs.' Mem. at 8, 8 n.2 (first citing *Bettis v. Grijalva*, No. 21-CV7505, 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023); then *Bravo v. U.S. Marshals Serv.*, No. 22-CV-6736, 2023 WL 4763207, at *9 (S.D.N.Y. July 26, 2023); and then *Edwards v. Gizzi*, No. 20-CV-7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022).) However, the Court is not persuaded by these holdings, nor must the Court adhere to them. As a number of courts in this district have done, this Court finds that a discussion with respect to the severity of a plaintiffs' medical condition should be reserved for the evaluation of the deliberate indifference claim itself, not conflated with the inquiry into whether a *Bivens* remedy exists at all. *See, e.g., Mendoza*, 615 F. Supp. 3d at 171; *Perez-Lopez v. Bialor*, No. 20-CV-02518, 2023 WL 2682922, at *6 (E.D.N.Y. Mar. 29, 2023) (rejecting defendants' argument that *Bivens* does not authorize an implied cause of action for the plaintiff's claim for deliberate indifference to his medical needs, but holding that the plaintiff nonetheless fails to state an Eighth Amendment claim); *Crespo v. Hurwitz*, No. 17-CV-6329, 2020 WL 7249591, at *8 (E.D.N.Y. May 17, 2020), *report and recommendation adopted,* No. 17-CV-6329, 2020 WL 7021658 (E.D.N.Y. Nov. 30, 2020) (holding that "while the degree of medical care sought here is not identical to that in *Carlson*, it is sufficient to satisfy the first prong of

---

allegations would present a new *Bivens* context that is much different from the life-threatening asthma attack that the plaintiff suffered in *Carlson*." 615 F. Supp. at 172 n.2. Nonetheless, the Court is more inclined to follow the court's fulsome analysis in the text than the contradictory language in an errant footnote.

12

*Ziglar*; the seriousness of [the] [p]laintiffs' medical conditions is considered in the context of whether the violation rises to a deprivation of an Eighth Amendment right.").

Because the Court finds that Plaintiff's claims do not extend *Bivens* to a new context, the Court need not assess whether special factors counsel hesitation. *See Laurent v. Borecky*, No. 17-CV-3300, 2018 WL 2973386, at *5 n.4 (E.D.N.Y. June 12, 2018) (holding that the court's finding that a plaintiff's claim did not extend *Bivens* into a new context "obviates the need for a special factors analysis").

## II. Deliberate Indifference Claim

A plaintiff must satisfy both an objective and a subjective requirement to prevail on a claim for deliberate indifference to a serious medical need. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). *First*, a plaintiff "must prove that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir. 1998)). *Second*, the plaintiff "must prove that the charged official acted with a 'sufficiently culpable state of mind.'" *Id*. (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### A. Serious Deprivation of Medical Treatment

To assess whether a plaintiff sufficiently demonstrates a serious deprivation of medical treatment, a court must evaluate the asserted medical condition "in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). Where, as here, a plaintiff's claim is based on a "temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must "focus on the challenged *delay* or *interruption* in

13

treatment rather than the [plaintiff]'s *underlying medical condition* alone," to determine whether the alleged deprivation is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (citing *Chance,* 143 F.3d at 702). That is, even if a plaintiff establishes a serious underlying medical condition, the deprivation of medical treatment may not be sufficiently serious if the delay or interruption in treatment was minor. Moreover, "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187. Because Plaintiff asserts a delay in medical treatment, the Court must consider, regardless of whether Plaintiff's underlying condition was serious, whether the length of the delay amounted to a serious deprivation of medical treatment to Plaintiff. Defendants argue that they are entitled to summary judgment because the undisputed factual record establishes that the delays in medical treatment with respect to the July 2017 and February 2019 incidents did not amount to a sufficiently serious deprivation of medical treatment. (*See* Defs.' Mem. at 16-17.) The Court agrees.

### 1. July 2017 Events

It is undisputed that on July 12, 2017, at approximately 2:00 p.m., Plaintiff first informed Defendants Pope and Metzger of his bruises and chest pain and, twenty minutes later, was sent by them to medical staff. (Consol. 56.1 Stmt. ¶¶ 6-8.) Plaintiff was then attended to by MDC medical staff, who ordered x-rays, provided him with pain medication, and told him to contact medical with any follow up questions or concerns. (*See id*. ¶¶ 10-12; Francis Decl., July 12 Record of Clinical Encounter at 2.) Plaintiff argues that he sufficiently establishes a serious deprivation of medical treatment because he had been the victim of physical attacks days before he received medical treatment on July 12, 2017, he was in extreme pain from a root canal, he

14

was not given sufficient pain medication by medical staff, and he did not undergo the x-rays that were ordered for him until a month and a half later. (Pl.'s Opp'n at 13-15.) These facts do not create a genuine dispute of material fact sufficient to sustain Plaintiff's claim. Critically, to sustain a *Bivens* action against a defendant, "a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). The events that transpired prior to Plaintiff making Defendants Pope and Metzger aware of his injuries on July 12, 2017 did not involve either Defendant and, as such, cannot be a basis for their liability. *See id*. For the same reason, the pain Plaintiff experienced from his unrelated root canal, which also did not involve Defendants Pope or Metzger, cannot be a basis for their liability. *See id*. Moreover, after Plaintiff was sent to medical, it was medical staff, not Defendants Pope or Metzger, who prescribed him pain medication and scheduled his x-ray. (*See* Francis Decl., July 12 Record of Clinical Encounter at 2.) As such, the only delay that Plaintiff experienced in connection with the actions of Defendants Pope and Metzger was the twenty minutes between when he informed them of his injuries and when they sent him to medical. (*See* Consol. 56.1 Stmt. ¶¶ 6-8.) There can be no question that this minor delay is not sufficient to amount to a serious deprivation of medical treatment.[6] *See, e.g.*, *Washington v. Artus,* 708 F. App'x 705, 708 (2d Cir. 2017) (affirming a district court's grant of summary judgment on a deliberate indifference claim where the plaintiff had argued that the defendants demonstrated deliberate indifference to his broken ankle by allowing four hours to pass before transporting him to the emergency room); *Khozouri-Zadeh v. Cnty. of Nassau*, No. 21-CV-4601, 2025 WL 343465, at *7 (E.D.N.Y. Jan. 30, 2025) (holding that a delay of one hour and fifty

---

[6] Moreover, Plaintiff's contention that the pain medication was not sufficient is of no consequence to the Court's analysis. *See Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) ("That [Plaintiff] feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim.").

15

minutes was not sufficient to demonstrate the existence of a genuine issue of fact as to a risk of serious harm). Moreover, Plaintiff points to no evidence, nor does he make any allegation, that the twenty minute delay between when he told Defendants Pope and Metzger of his injury and when they sent him to be evaluated by medical staff exacerbated his injury in any way. As such, no reasonable jury could find that those twenty minutes amounted to a serious deprivation of medical care to Plaintiff. *See Washington,* 708 F. App'x at 708 ("[N]o reasonable jury could find that the approximately four hours that elapsed between [plaintiff's] injury and his arrival at the emergency room was a sufficiently serious deprivation of medical care," where plaintiff's injuries were not exacerbated in that time.); *Khozouri-Zadeh*, 2025 WL 343465 at *7 (granting summary judgment for defendant where "[a]lthough [p]laintiff alleged that he remained in pain during the one hour and fifty-minute wait, he does not allege that the delay exacerbated his injuries"); *Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 664 (E.D.N.Y. 2021) (granting summary judgment for defendant where plaintiff recovered an hour and a half after reporting his symptoms, which did not constitute deliberate indifference to a serious medical need).

For these reasons alone, Defendants are entitled to summary judgment on Plaintiff's claims against Defendants Pope and Metzger with respect to the July 2017 incidents.

### 2. February 2019 Events

With respect to the February 2019 incident, the undisputed facts, taken in the most favorable light to Plaintiff, indicate that, at most, a little over one day passed between when Plaintiff first alerted Defendants Calixte and Metzger about his vomiting blood and chest pain and when Plaintiff was evaluated by medical staff and transferred to the hospital. (Consol. 56.1 Stmt. ¶¶ 14, 22.) Again, to support his argument that he sufficiently establishes a serious deprivation of serious medical treatment, Plaintiff directs the Court to the fact that "BOP knew

16

that Plaintiff had undergone emergency gallbladder surgery in December 2018," and that Plaintiff emailed medical staff on February 4, 2019, informing them that he was throwing up blood and that his left side was numb. (Pl.'s Opp'n at 15-16.) However, as the Court stated above, "a plaintiff must allege that the individual defendant was personally involved in the constitutional violation" to sustain a *Bivens* claim against those defendants. *Thomas*, 470 F.3d at 496. Thus, these events that did not involve Defendants Calixte or Metzger are of no consequence to the Court's analysis.

Moreover, as with the July 2017 incident, Plaintiff points to no evidence, nor does he make any allegation, that the day-long delay between when he told Defendants Calixte and Metzger of his pain and when he was finally evaluated by medical staff exacerbated his injury in any way. In fact, Plaintiff's medical records suggest that his symptoms were not worsening at the time. For example, at Plaintiff's February 6, 2019 evaluation he reported that he had five or six vomiting episodes in the prior four days, and that Plaintiff "threw up a lot of blood (unwitnessed) with food" on the first day but later "threw up chunks of food with no blood." (Francis Decl., Feb. 6 Record of Clinical Encounter at 1.) Moreover, hospital records from KJMC stated that Plaintiff was experiencing stomach issues because his gallbladder had been removed and he had to get used to digesting fatty foods. (Consol. 56.1 Stmt. ¶ 25.) Then, days after his return from KJMC, Plaintiff's follow up evaluation reflected that he was in "[n]o [a]pparent [d]istress." (Francis Decl., Feb. 10 Report of Clinical Encounter at 1.) Plaintiff fails to raise any genuine issue of material fact that would otherwise suggest that, between February 5, 2019 and February 6, 2019, his condition was being exacerbated by the delay in medical treatment such that it could amount to a serious deprivation of medical treatment. Thus, no reasonable jury could find that Plaintiff suffered a serious deprivation of medical treatment due

17

to this delay. *See, e.g., Smith*, 316 F.3d at 189 (upholding the denial of a new trial because the jury was free to consider the absence of concrete medical injury to prisoner as a relevant factor in determining whether alleged deprivation of his HIV medication for several days was sufficiently serious to satisfy the objective serious medical need standard); *Singletary v. Russo*, 377 F. Supp. 3d 175, 188 (E.D.N.Y. 2019) (holding that defendants were entitled to summary judgment because "a reasonable jury could not find that a one-month delay in referring [plaintiff] to a specialist constituted a deprivation of adequate medical care" where plaintiff had not been in need of urgent care at the time).

### B. Deliberate Indifference

Absent a serious deprivation of medical treatment, Defendants are entitled to summary judgment on Plaintiff's *Bivens* claim. Nonetheless, Defendants contend that, even if Plaintiff established a serious deprivation of medical treatment, the undisputed evidence demonstrates that Defendants did not act with deliberate indifference with respect to either the July 2017 or February 2019 incidents. (Defs.' Mem at 17-21.) The Court agrees.

To establish the second element of a deliberate indifference claim, a plaintiff must "prove that the charged official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hathaway*, 37 F.3d at 66 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). There are a limited number of scenarios where a delay in providing necessary medical care may constitute deliberate indifference. Specifically, the Second Circuit "has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment," "ignored a life-threatening and fast-degenerating condition for three days," or "delayed major surgery for two

18

years." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations and quotations omitted); *see also Archer v. Dutcher*, 733 F.2d 14, 16-17 (2d Cir. 1984) (officials deliberately delayed care as a form of punishment); *Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir. 1990) (officials ignored a life-threatening and fast-degenerating condition for three days); *Hathaway v. Coughlin,* 841 F.2d 48, 50-51 (2d Cir. 1988) (officials delayed major surgery for two years). None of these circumstances are present here with respect to either the July 2017 or the February 2019 incidents.

     First, there can be no question that the brief, twenty-minute delay at issue in the July 2017 incident, and the shortly over a day delay at issue in the February 2019 incident, can be analogous to the two-year delay of major surgery at issue in *Hathaway v. Coughlin*. 841 F.2d at 50-51. Moreover, the record is devoid of any evidence sufficient to create a genuine issue of fact, nor does Plaintiff make any allegation, that Defendants deliberately delayed medical treatment as punishment either with respect to either the July 2017 incident or the February 2019 incident. Indeed, the only allegation that Plaintiff directs the Court to are the alleged comments made by Defendant Metzger that Plaintiff should "learn to fight" after reporting the July 2017 injury, and that Plaintiff "need[ed] medicine attention for [his] head" with respect to the February 2019 injury. Neither of these comments alone would be sufficient to establish that Defendant Metzger acted with deliberate delay to punish Plaintiff. *See, e.g., Hallett v. New York*, No. 08-CV-2831, 2010 WL 1379733, at *7 (S.D.N.Y. Mar. 26, 2010) (granting summary judgment for defendants and holding that a defendant's "sarcastic remark" to the plaintiff was irrelevant "in light of the fact that the [d]efendants acted promptly to alleviate [p]laintiff's discomfort"); c*f. Elleby v. Smith*, 14-cv-1436, 2014 WL 7242899 (S.D.N.Y. Dec. 16, 2014) (holding that a plaintiff sufficiently pleaded deliberate indifference where he alleged that officers

19

laughed at him "rather than attempting to remedy a dangerous situation of which they were aware"). Lastly, the undisputed facts suggest that Plaintiff did not suffer a "life-threatening" or "fast degenerating" condition with respect to either the July 2017 or the February 2019 incidents. Indeed, as the Court highlighted above, Plaintiff's medical reports from each incident reflect that Plaintiff's condition was not "fast degenerating," as it was not being exacerbated or worsening during the brief delay in medical treatment, nor is there any evidence in the record to suggest that Plaintiff's injuries were life-threatening. (*See supra* p. 15-18.)

For the reasons stated above, Defendants are entitled to summary judgment on Plaintiff's *Bivens* claim. The Court need not reach Defendants' arguments regarding the applicability of qualified immunity or Plaintiff's failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2025

/s/ LDH
LaShann DeArcy Hall
United States District Judge